# IN THE SUPREME COURT OF TEXAS

No. 17-0660

ROSENBERG DEVELOPMENT CORPORATION, PETITIONER,

v.

IMPERIAL PERFORMING ARTS, INC., RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

**Argued October 11, 2018**

JUSTICE GUZMAN delivered the opinion of the Court.

CHIEF JUSTICE HECHT filed a concurring opinion.

The sovereign immunity doctrine prohibits suits against the government without the state's consent. Though rooted in the feudal fiction that the "king can do no wrong,"[1] modern justifications for sovereign immunity are political, pecuniary, and pragmatic.[2] Among other benefits, sovereign immunity maintains equilibrium among the branches of government by honoring "the allocation of responsibility" for resolving disputes with the state.[3] The immunity doctrine also protects the public coffers by deferring to the Legislature's policy decisions about

---

[1] *Wasson Interests, Ltd. v. City of Jacksonville* (*Wasson I*), 489 S.W.3d 427, 431 (Tex. 2016) (observing rationales for sovereign immunity originated from the English legal fiction that "[t]he King can do no wrong" (quoting 1 WILLIAM BLACKSTONE, COMMENTARIES 246)).

[2] *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 413-16 (Tex. 1997) (Hecht, J., concurring) (exploring considerations underlying modern justifications for sovereign immunity).

[3] *Id.* at 416 (Hecht, J., concurring); *see State v. Snyder*, 18 S.W. 106, 109 (1886) (sovereign immunity is premised on the conclusive presumption that, absent express waiver of immunity from suit, the state "fully recognizes every just claim the citizen has against it, that in its own way it will do justice in reference thereto, and that it has ability to do so"); *Borden v. Houston*, 2 Tex. 594, 611 (1847) ("sovereignty" and "coercion" are incompatible).

"when to allow tax resources to be shifted 'away from their intended purposes toward defending lawsuits and paying judgments.'"[4]  But while the doctrine "shield[s] the public from the costs and consequences of [the] improvident actions of their government,"[5] protecting the purse comes at the expense of ensuring accountability under the law for the government's breaches.[6]  To facilitate equipoise in the doctrine's operation, "[t]he judiciary determines the applicability of immunity in the first instance and delineates its boundaries," but we defer to the Legislature to waive immunity when it exists.[7]

As an extension of sovereign immunity, governmental immunity protects political subdivisions performing governmental functions as the state's agent.[8]  The issue of first impression in this contract dispute is whether a municipally created economic development corporation is entitled to immunity from suit as if it were a political subdivision of the state.  The Texas Development Corporation Act[9] authorizes political subdivisions to create nonprofit corporations to undertake projects designed to spur economic growth and reduce unemployment,[10] but at the same time expressly (1) denies those corporate entities status as political subdivisions and (2) forbids authorizing municipalities from delegating any attributes of sovereignty to those

---

[4] *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) (quoting *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) (plurality op.)).

[5] *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

[6] *See Brown & Gay Eng'g*, 461 S.W.3d at 121 (sovereign immunity places the burden of shouldering the "costs and consequences of improvident actions" on injured parties); *see* TEX. CONST. art. 1, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").

[7] *Wasson I*, 489 S.W.3d at 435.

[8] *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323-24 (Tex. 2006); *Tooke*, 197 S.W.3d at 343, 345.

[9] TEX. LOC. GOV'T CODE §§ 501.001-507.202.

[10] *Id.* §§ 501.004, .054(a).

entities.[11] Consistent with these express indicators of legislative intent and with the immunity doctrine's underlying purposes, we hold economic development corporations are not governmental entities in their own right and therefore are not entitled to governmental immunity. We accordingly affirm the court of appeals' judgment denying the economic development corporation's plea to the jurisdiction.

## I. Background

Rosenberg Development Corporation (RDC) is a Type B economic development corporation created by the City of Rosenberg under the authority of the Development Corporation Act (the Act).[12] RDC was incorporated "exclusively for the purposes of . . . promoting, assisting[,] and enhancing economic and industrial development activities and . . . promot[ing] or develop[ing] new or expanded business enterprises, including public facilities . . . ."

In March 2012, RDC executed a contract (Performance Agreement) with Imperial Performing Arts, Inc. (Imperial), a nonprofit organization that promotes and produces performance and visual art. RDC agreed to pay Imperial $500,000 to, among other things, (1) lease, renovate, and reopen an arts center by the end of September 2012, (2) arrange to renovate and open a historic theater by the end of 2014, and (3) promote RDC as an underwriter of six events at each facility.[13] Under the contract's terms, RDC's board of directors retained sole discretion to grant an extension of the opening date for each location, but permission could not be "unreasonably withheld."

---

[11] *Id.* §§ 501.010, .055(b).

[12] *Id.* §§ 505.001–.355.

[13] Imperial characterizes the payments as "'seed money' for its cultural and performing arts initiative in Rosenberg, Texas."

In accordance with the Performance Agreement, RDC paid Imperial $500,000 in two equal payments. However, both projects turned out to be more time-consuming and expensive than contemplated, with the theater requiring so much work that the "renovation" would effectively require rebuilding at an alleged cost of up to $5 million over the course of up to five years. Despite these challenges, Imperial completed and opened the arts center in November 2012 after receiving an extension from RDC. But when Imperial asked RDC to extend the deadline to complete the theater's renovation and also to amend the Performance Agreement to allow Imperial to either select or construct an alternative venue, RDC allegedly refused. Imperial ceased work on the theater project in June 2014, and this legal dispute followed.

The litigation has a complicated procedural posture and involves myriad claims, counterclaims, and third-party claims,[14] but the immunity issue on appeal is limited to Imperial's breach-of-contract and declaratory-judgment claims. The former asserts that RDC breached the Performance Agreement by "unreasonably refusing to grant [Imperial] an extension," while the latter requests a declaration that the $500,000 RDC paid under the contract was an unconditional and absolute grant of those funds to Imperial that need not be refunded.

Assuming its immunity from suit, RDC filed a plea to the jurisdiction arguing that (1) Imperial's consequential-damages claims are barred by section 271.153 of the Texas Local Government Code; (2) Imperial failed to plead a valid waiver of governmental immunity because the breach-of-contract immunity waiver in section 271.152 of the Local Government Code applies

---

[14] Imperial initially asserted tort and declaratory-judgment claims against RDC and two of its directors. After RDC sought discovery about Imperial's expenditures, Imperial nonsuited its complaint. On the same day as the nonsuit, but before the trial court signed a dismissal order, RDC filed counterclaims against Imperial and, alternatively, asserted claims as an intervening counter-plaintiff against Imperial and several of its directors. Imperial then reasserted its claims against RDC.

4

only to political subdivisions not economic development corporations;[15] (3) RDC is immune from liability for damages under section 505.106 of the Local Government Code as to its performance of governmental functions; and (4) RDC did not waive immunity from suit by asserting claims against Imperial. The trial court granted the plea in part but denied it in most respects, allowing Imperial's breach-of-contract and declaratory-judgment claims to move forward. RDC appealed.

The court of appeals affirmed the trial court's order denying RDC's plea to the jurisdiction.[16] As a preliminary matter, the court addressed *sua sponte* its jurisdiction over the interlocutory appeal, holding RDC satisfied the statutory definition of "governmental unit" for purposes of the interlocutory-appeal statute.[17] Then, because RDC's appellate arguments assumed its immunity from suit—a matter implicating subject-matter jurisdiction—the court considered *sua sponte* whether RDC actually enjoys such immunity.[18]

The court first determined that RDC, which is neither a state agency nor a political subdivision, is not immune from suit under the common law.[19] The court then examined the Development Corporation Act's provision limiting liability for Type B economic development corporations and held the Legislature did not purport to grant economic development corporations immunity from suit for non-tort claims.[20] Section 505.106 of the Act provides:

---

[15] *See id.* §§ 271.151(3) (defining "local governmental entity"), .152 (waiver of immunity from suit for certain claims against a "local governmental entity"), .153 (limitation on amount and type of damages in an adjudication against a "local governmental entity"), § 501.055(b) ("A corporation is not a political subdivision or a political corporation for purposes of the laws of this state . . . .").

[16] 526 S.W.3d 693, 709 (Tex. App.—Houston [14th Dist.] 2017).

[17] *Id.* at 698-701.

[18] *Id.* at 701.

[19] *Id.* at 704-06.

[20] *Id.* at 708-09.

(a) The following are *not liable for damages* arising from the performance of a governmental function of a Type B corporation or the authorizing municipality:
(1) the corporation;
(2) a director of the corporation;
(3) the municipality;
(4) a member of the governing body of the municipality; or
(5) an employee of the corporation or municipality.
(b) For purposes of Chapter 101, Civil Practice and Remedies Code, a Type B corporation is a governmental unit and the corporation's actions are governmental functions.[21]

Applying the statute's plain language, the court held: (1) subsection (a) provides immunity only from liability—not from suit—and only for claims arising from an economic development corporation's performance of governmental functions, and (2) subsection (b) "invoke[s] the common law doctrine of governmental immunity" for economic development corporations, but only for tort claims covered by the Texas Tort Claims Act, not the non-tort claims at issue here.[22]

In so holding, the court distinguished cases from other Texas appellate courts RDC cited as immunizing economic development corporations from liability or suit.[23] The court disapproved of the analysis in *Weir Bros., Inc. v. Longview Economic Development Corp.*, which affirmed a judgment granting an economic development corporation's jurisdictional plea on fraud, antitrust, and breach-of-contract claims.[24] Though finding subject-matter jurisdiction lacking, the *Weir* court only considered whether subsection (a) sheltered the corporation from liability, not immunity

---

[21] TEX. LOC. GOV'T CODE § 505.106 (emphasis added); *see id.* § 504.107 (similar provision applicable to Type A corporations).

[22] 526 S.W.3d at 708-09 (citing *City of Leon Valley Econ. Dev. Corp. v. Little*, 422 S.W.3d 37, 44 (Tex. App—San Antonio 2013, no pet.).

[23] *Id.* at 706-07.

[24] 373 S.W.3d 841, 843 (Tex. App.—Dallas 2012, no pet.) (applying a similarly worded liability limitation applicable to Type A economic development corporations).

6

from suit.[25]  Here, the lower court observed that treating immunity from liability as a jurisdictional matter is erroneous because immunity from liability is an affirmative defense that is not a proper basis for a jurisdictional plea.[26]  The court of appeals also distinguished *City of Weslaco v. Borne* as involving tort claims and thus invoking subsection (b) and its limitations,[27] which are inapplicable to the non-tort claims at issue in this case.[28]

We granted RDC's petition for review to address whether economic development corporations are governmental entities immune from suit.

## II. Discussion

### A. Economic Development Corporations

Economic development corporations are authorized under and subject to the Development Corporation Act (Title 12, Subtitle C1 of the Local Government Code).[29]  The Act authorizes municipalities like the City of Rosenberg to form economic development corporations for the limited purpose of promoting and developing enterprises that, in turn, promote and encourage employment and the public welfare.[30]  In adopting the Act, the Legislature found "the present and prospective right to gainful employment and the general welfare of the people of this state" require

---

[25] *See id.* at 846 (concluding the corporation was "immune from liability").

[26] 526 S.W.3d at 707; *accord State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009) ("[I]mmunity from liability is an affirmative defense that cannot be raised by a plea to the jurisdiction.").

[27] 210 S.W.3d 782, 788 n.1 (Tex. App.—Corpus Christi 2006, pet. denied).

[28] 526 S.W.3d at 707.

[29] TEX. LOC. GOV'T CODE §§ 501.001–507.202.  The Development Corporation Act defines "corporation" as any corporation "organized under [the Act]," *id.* § 501.002(5), which includes "county alliance corporations" and "spaceport development corporations," *id.* §§ 506.001–.202, 507.001–.202.  But only Type A and Type B corporations are referred to as "economic development *corporations*."  *E.g.*, *Type A and B Economic Development Corporations Overview*, TEXAS COMPTROLLER, https://comptroller.texas.gov/economy/local/type-ab/index.php.

[30] TEX. LOC. GOV'T CODE §§ 501.004(a)(6), .051(c).

7

these activities "as a public purpose."[31] The Legislature has therefore determined that establishing

and funding economic development corporations is "in the public interest" and "serve[s] a public

purpose."[32]

Depending mainly on the size of the authorizing municipality, economic development

corporations are categorized as either Type A or Type B.[33] Each type is authorized to finance "one

or more projects" that may be funded, in part, by local taxes or the proceeds of revenue bonds.[34]

"Projects" are delineated by the statute, but broadly defined. All economic development

corporations are authorized to undertake projects related to creating or retaining primary jobs, job

training, and improving infrastructure.[35] Type B corporations, like RDC, may also undertake

projects related to recreational or community facilities, affordable housing, water-supply facilities,

water-conservation programs, and airport facilities.[36]

The corporations are specifically empowered to lease or sell a project,[37] donate property to

a higher-education institution,[38] issue bonds to defray the costs of a project,[39] and sue or defend a

suit in their corporate name.[40] However, economic development corporations may only incur

financial obligations that can be paid from bond proceeds, revenue realized from the lease or sale

---

[31] *Id.* § 501.004(a)(1).

[32] *Id.* § 501.004(a)(1), (4), (6).

[33] *Id.* §§ 504.001−.002; 505.001−.002.

[34] *Id.* §§ 501.151, .201, 504.251−.254, 505.251−.254, .302; *see also* TEXAS COMPTROLLER, BIENNIAL ECONOMIC DEVELOPMENT CORPORATION REPORT 2016-2017, at 2, https://comptroller.texas.gov/transparency/reports/economic-development-corporation/ (breaking down economic development corporations' source of funds).

[35] TEX. LOC. GOV'T CODE §§ 501.101-103.

[36] *Id.* §§ 505.152-.154, 505.161.

[37] *Id.* § 501.153.

[38] *Id.* § 501.154.

[39] *Id.* § 501.201.

[40] *Id.* § 501.060.

of a project, revenue realized from a loan to finance or refinance a project, or money granted under contract with a municipality.[41]

The Development Corporation Act characterizes economic development corporations as nonprofit corporate entities with "the powers, privileges, and functions of a nonprofit corporation," except to the extent of any conflict between the Act and the laws governing nonprofits.[42] Even though the corporations are private entities,[43] the Legislature demands transparency with regard to corporate endeavors by requiring compliance with the Texas Open Meetings Act and the Texas Public Information Act.[44] And along with public oversight afforded under the open-government laws, authorizing municipalities have some supervisory control over economic development corporations.[45] Ultimately, however, "[a]ll of the powers of [the] corporation are vested in" the corporation's board of directors.[46]

The Act does not speak to governmental immunity directly, but in section 505.106, the Legislature has declared that (1) a Type B corporation is "not liable for damages arising from the performance of a governmental function of a Type B corporation or the authorizing municipality," and (2) "[f]or purposes of Chapter 101, Civil Practice and Remedies Code, a Type B corporation

---

[41] *Id.* § 501.008.

[42] *Id.* §§ 501.053–.054.

[43] *See id.* §§ 504.102, 505.102 (authorizing Type A and Type B corporations to "contract with *another* private corporation" for certain purposes (emphasis added)).

[44] *Id.* § 501.072.

[45] *See, e.g.*, *id.* § 501.054(b)(2) (with respect to projects, the corporation's exercise of power is "subject to the control of the governing body of the corporation's authorizing unit"), .073 ("The corporation's authorizing unit will approve all programs and expenditures of a corporation and annually review any financial statements of the corporation."), .073(a) (the corporation's authorizing unit may access the corporation's records at any time).

[46] *Id.* § 501.062(a). A Type B corporation's seven-member board is appointed by the authorizing municipality; none of the board members are required to be employees, officers, or members of the governing body and at least three cannot be; and any member of the board of directors may be removed by the governing body without cause. *Id.* §§ 505.051, .052.

is a governmental unit and the corporation's actions are governmental functions."[47]   Notably, however, an economic development corporation "is not a political subdivision or a political corporation for purposes of the laws of this state . . . ."[48]   And the Legislature has forbidden authorizing municipalities from bestowing on the corporation any "attributes of sovereignty."[49]

## B. Sovereign and Governmental Immunity

Sovereign immunity has long been described as one of the "attributes of sovereignty."[50] Unless waived, sovereign immunity protects the state and its agencies from lawsuits for damages.[51] In Texas, the immunity doctrine has two aspects:   (1) immunity from suit even when the sovereign's liability is not disputed and (2) immunity from liability even though the sovereign has consented to the suit.[52]   Immunity from suit recognizes the judiciary's limited authority over its sovereign creator and thus implicates the courts' subject-matter jurisdiction to resolve a dispute against the state.[53]   In comparison, immunity from liability only protects the state from money judgments, is not jurisdictional, and must be raised as an affirmative defense rather than by

---

[47] *Id.* § 505.106.

[48] *Id.* § 501.055(b).

[49] *Id.* § 501.010 ("A unit may not delegate to a corporation any of the unit's attributes of sovereignty, including the power to tax, the power of eminent domain, and the police power.").

[50] *See City of Galveston v. State*, 217 S.W.3d 466, 477 (Tex. 2007) (noting states joining the federal system had forfeited certain attributes of sovereignty, but not traditional immunity from private suits, "an inherent attribute of sovereignty"); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003) (describing sovereign immunity from private suit without consent as "one of the attributes of sovereignty" (quoting The Federalist No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed. 1961)); *Herring v. Hous. Nat'l Exch. Bank*, 269 S.W. 1031, 1032 (Tex. 1925) (describing immunity as "an attribute of sovereignty"); *Bd. of Land Comm'rs v. Walling*, Dallam 524, 526 (Tex. 1843) ("That it is one of the essential attributes of sovereignty not to be amenable to the suit of a private person without its own consent has grown into a maxim, sanctioned as well by the laws of nations as the general sense and practice of mankind.").

[51] *E.g.*, *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93 (Tex. 2012).

[52] *See id.*

[53] *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018).

jurisdictional plea.[54]   As a common-law doctrine, the judiciary determines whether immunity exists in the first instance, and if it does, we defer to the Legislature to waive or abrogate it.[55]

Political subdivisions of the state—such as counties, cities, and school districts—are not sovereign entities, but under the governmental-immunity doctrine,[56] they share the state's immunity when performing governmental functions as the state's agent.[57]   Governmental immunity applies to municipalities, like the City of Rosenberg, because they are quasi-public in nature with powers "pertaining to the administration of general laws made to enforce the general policy of the state."[58]   And when enforcing the state's laws, municipalities "stand as does sovereignty, whose agents they are."[59]  Unlike the state, however, municipalities can exercise their broad powers in two different capacities:  proprietary and governmental.[60]  Because governmental immunity extends "as far as the state's [immunity] but no further," no immunity exists for acts performed in a proprietary, non-governmental capacity.[61]

The threshold issue on appeal here is whether RDC—a municipality's statutorily authorized corporate creation—is immune from suit under the common law even though RDC is neither a sovereign entity nor a political subdivision of the state.  Though RDC claims both

---

[54] *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 840 (Tex. 2018); *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).

[55] *Wasson I*, 489 S.W.3d 427, 435 (Tex. 2016); *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

[56] Though the terms are often used interchangeably, sovereign immunity and governmental immunity protect distinct entities.  *See, e.g.*, *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694-95 & n.3 (Tex. 2003).

[57] *Wasson I*, 489 S.W.3d at 429-30.

[58] *City of Galveston v. Posnainsky*, 62 Tex. 118, 127-28 (1884).

[59] *Id.* at 127.

[60] *Gates v. City of Dallas*, 704 S.W.2d 737, 738 (Tex. 1986).

[61] *Wasson I*, 489 S.W.3d at 430, 433-34 (proprietary acts "are not done as a branch of the state, but instead 'for the private advantage and benefit of the locality and its inhabitants'" (citations omitted)).

11

immunity from suit and immunity from liability, the latter is not properly before us on a plea to the jurisdiction, and we do not consider it.

We also do not consider the existence *vel non* of RDC's statutory immunity under the Development Corporation Act because section 505.106 does not purport to grant immunity. More specifically, subsection (a)'s plain terms only seek to limit an economic development corporation's liability for certain remedies—that is, "damages" arising from the corporation's performance of any governmental functions—without reference to the corporation's "governmental status" or "immunity."[62] And subsection (b) merely imports the Texas Tort Claims Act's limitations on liability and damages. As we have observed, "the Tort Claims Act does not create sovereign immunity[;] it provides a limited waiver of that immunity," such that an entity may be sued and damages had on the terms specified in the Tort Claims Act.[63] Because section 505.106 merely purports to limit the remedies available when economic development corporations perform governmental functions, we need not consider whether the Legislature can confer immunity by statute or only waive it.[64]

## C. Interlocutory Appeal Jurisdiction

As a preliminary matter we must determine whether the interlocutory order denying RDC's plea to the jurisdiction is immediately appealable. Jurisdiction over interlocutory appeals is

---

[62] TEX. LOC. GOV'T CODE § 505.106(a); *see Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 841 (Tex. 2018) (noting the Legislature did not purport to grant immunity to independent contractors under a similar statute that caps contractors' liability for performing governmental functions because "neither 'governmental status' nor 'immunity' appears in the statute") (citing TEX. TRANSP. CODE § 452.056(d)); *cf., e.g.*, *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 423 (Tex. 2011) (distinguishing remedies at law, like money damages, from equitable relief, like an injunction or specific performance).

[63] *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 123 n.6 (Tex. 2015) (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)) (internal quotation marks omitted); *see also* TEX. LOC. GOV'T CODE § 505.106(b).

[64] *See Rodriguez*, 547 S.W.3d at 842 n.2 (reserving judgment on that issue); *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 78 n.44 (Tex. 2011) (same).

12

limited,[65] but section 51.014(a)(8) of the Texas Civil Practice and Remedies Code permits an appeal from an interlocutory order granting or denying "a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001" of the Texas Tort Claims Act.[66]

Section 101.001's definition of "governmental unit" does not include economic development corporations by name or by reference to the Development Corporation Act. Subsection (3)(D), however, broadly applies the governmental-unit label to any "institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution."[67] The court of appeals undertook an analysis of subsection (3)(D)'s definition as applied to economic development corporations,[68] but we find it unnecessary to do so because section 505.106(b) of the Development Corporation Act states that "[f]or purposes of Chapter 101, Civil Practice and Remedies Code [the Texas Tort Claims Act], a Type B corporation is a governmental unit . . . ."[69] Because the Legislature expressly expanded section 101.001's governmental-unit definition to include economic development corporations, RDC is a governmental unit for purposes of the interlocutory appeal authorized by section 51.014(a)(8).[70]

---

[65] *See* TEX. CIV. PRAC. & REM. CODE § 51.014.

[66] *Id.* § 51.014(a)(8) (citing *id.* § 101.001); *see Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 906 (Tex. 2017) (observing the term "governmental unit" for purposes of section 51.014(a)(8) has the same meaning as it does in the Texas Tort Claims Act).

[67] TEX. CIV. PRAC. & REM. CODE § 101.001(3)(D).

[68] 526 S.W.3d at 698-701.

[69] TEX. LOC. GOV'T CODE § 505.106(b). A nearly identical provision applies to Type A corporations. *See id.* § 504.107(b).

[70] Until recently, this Court's jurisdiction over most interlocutory appeals had been limited to those involving a conflict or dissent. *See Pidgeon v. Turner*, 538 S.W.3d 73, 81 (Tex. 2017) (citing former TEX. GOV'T CODE § 22.225(c)). But for orders issued after September 1, 2017, the restraints on our interlocutory-appeal jurisdiction have been lifted. *See* TEX. GOV'T CODE § 22.001, as amended by Act effective Sept. 1, 2017, 85th Leg. Ch. 150, § 1, sec. 4(1), 2017 Tex. Gen. Laws 291, 292 (codified as TEX. GOV'T CODE § 22.001 et. seq.); *see* TEX. GOV'T CODE § 22.225, as amended by Act effective September 1, 2017, 85th Leg. Ch. 150, § 1, sec. 4(3), 2017 Tex. Gen. Laws 291, 292 (codified at TEX. GOV'T CODE § 22.225). We generally apply jurisdictional statutes as they exist at the time

## D. Immunity from Suit

"[W]hether an entity is entitled to an interlocutory appeal and whether an entity has sovereign immunity are separate questions with separate analytical frameworks."[71] Accordingly, we turn now to the main issue presented: whether a corporation organized and formed by a municipality under the Development Corporation Act enjoys governmental immunity from suit as an arm of the state. We begin by looking to the Act to determine whether the Legislature intended such an entity to have discrete governmental-entity status separate and apart from its authorizing municipality.[72] We conclude it did not.

An entity claiming governmental immunity must ordinarily be a political subdivision. RDC is not. In the Development Corporation Act, the Legislature explicitly rejects an economic development corporation's political-subdivision status.[73] Taking the matter one step further, the Legislature prohibits an authorizing municipality from delegating "any of [its] attributes of sovereignty, including the power to tax, the power of eminent domain, and the police power" to the corporation.[74]

---

of our judgment, *see Texas Mun. Power Agency Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 198 (Tex. 2007), "[b]ecause application of a new jurisdictional rule generally takes away no substantive right but simply impacts a tribunal's power to hear the case," *Univ. of Tex. Sw. Med. Ctr. v. Estate of Arancibia*, 324 S.W.3d 544, 548 (Tex. 2010). We have jurisdiction over this appeal under the current jurisdictional statute and, to the extent a conflict would have been required under the former statute, the jurisdictional analysis and disposition in *Weir Bros., Inc. v. Longview Economic Development Corp.*, 373 S.W.3d 841, 843 (Tex. App.—Dallas 2012, no pet.), conflicts with the court of appeals' holding in this case that dismissal on jurisdictional grounds is not appropriate on the basis of an entity's immunity from liability. *See* former TEX. GOV'T CODE § 22.225(c), (e).

[71] *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 911 (Tex. 2017).

[72] *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324-25 (Tex. 2006) (examining various statutory provisions to determine whether statutorily authorized governmental self-insurance fund's "'nature, purposes and powers' demonstrate legislative intent that it exist as a distinct governmental entity entitled to assert immunity in its own right for the performance of a governmental function" (quoting *Harris Cty. Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1101 (Tex. 1940))).

[73] TEX. LOC. GOV'T CODE § 501.055(b).

[74] *Id.* § 501.010.

Nonetheless, "where the governing statutory authority demonstrates legislative intent to grant an entity the 'nature, purposes, and powers' of an 'arm of the State government,' that entity is a government unit unto itself" and is entitled to assert immunity in its own right as to the performance of governmental functions.[75] In determining whether the Legislature intended economic development corporations to exist as distinct governmental entities, we find analytical guidance in *Ben Bolt–Palito Blanco Consolidated Independent School District v. Texas Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, which involved a self-insurance fund composed of several political subdivisions.[76] We held the fund itself was a governmental entity in its own right and was therefore entitled to immunity on equal footing with its constituent members.[77]

In so holding, we identified several indicia of legislative intent in the Texas Interlocal Cooperation Act and the Texas Government Code's self-insurance provisions. First, under the Interlocal Cooperation Act's special definitions, the fund was a "local government."[78] That enactment also "expressly authorized *combinations* of political subdivisions"—like the fund—"to perform governmental functions and services," which were defined as including "governmental functions in which the contracting parties are mutually interested."[79] We noted that local governments have an interest in guarding against risk and the Legislature explicitly authorized political subdivisions to combine to provide self-insurance and "use available money to finance a

---

[75] *Ben Bolt–Palito*, 212 S.W.3d at 325-26.

[76] *Id.* at 320.

[77] *Id.* at 320, 326.

[78] *Id.* at 324-25 (citing TEX. GOV'T CODE § 791.003(4)(A), (E)).

[79] *Id.* at 324-25 (citing TEX. GOV'T CODE § 791.003(3)(N), (4)(E), .011(a)) (emphasis added).

self-insurance pool" "as a 'public purpose' of the governmental unit."[80]  Thus, although the fund

was simply a collection of other political subdivisions, the fund's "nature, purposes, and powers"

demonstrated the Legislature's intent that the fund exist as a distinct governmental entity.[81]

The statutes in *Ben Bolt–Palito* are distinguishable in terms of the Legislature's

characterization of the entity.  While the self-insurance fund fell within the Interlocal Cooperation

Act's definition of a local government, economic development corporations are described as

private, nonprofit corporations and empowered as such.[82]  More significantly, the Legislature has

expressly denied economic development corporations significant governmental characteristics—

political-subdivision status and attributes of sovereignty.  In a telling comparison, the Local

Government Code identifies another type of local economic-development initiative—the

"municipal management district"—as "a governmental agency, a body politic and corporate, and

a political subdivision of the State."[83]  The Development Corporation Act thus evinces clear

legislative intent that an economic development corporation is not an arm of state government.

Both RDC and amicus Midland Development Corporation direct us to other aspects of the

Development Corporation Act they assert bear contrary indicia.  They point out that economic

development corporations are not "ordinary" nonprofits because they are subject to statutory

restrictions and requirements that do not generally apply to non-governmental organizations, such

as certain open-government requirements.  But heavily regulating an entity does not equate to

conferring governmental-entity status.  On this front, the statute is, at best, a "mixed bag," but

---

[80] *Id*. at 325.

[81] *Id.* 325-26 & n.3.

[82] *See* TEX. LOC. GOV'T CODE §§ 501.053, .054.

[83] *Id*. § 375.004(a).

16

there is precious little in the statute to overcome the Legislature's clear and express directives, which are notably unique in and of themselves.[84]

Although the Development Corporation Act describes promoting and developing business enterprises and job training as public purposes,[85] merely engaging in an act that serves a public purpose says nothing about the nature of the entity itself[86]—as our opinion in *Brown & Gay Engineering, Inc. v. Olivares* makes clear.[87] Serving public purposes, as many nonprofits and public contractors do, does not ipso facto equate to status as a governmental entity for governmental immunity purposes. By and large, the projects an economic development corporation are authorized to pursue have a governmental flair, but not so uniquely or so definitively that only a governmental entity would engage in those activities.

Our holding today does not imply that the Legislature could de facto grant an entity immunity simply by designating it as a "governmental entity." The common-law rule of immunity is exclusively for the judiciary to define, and in doing so, we do not just consider whether the entity performs governmental functions, but also the "nature and purposes of immunity."[88] Aside from the statutory indicators of legislative intent, granting immunity to economic development

---

[84] Indeed, section 501.010 of the Act appears to be the only statute referring to sovereign attributes, one way or the other, and the directness of section 501.005 in denying political-subdivision status is similarly unmatched elsewhere.

[85] *Id.* § 501.004(a).

[86] An activity may constitute a governmental function for one type of political subdivision but not for another. *See Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 814-15 (Tex. 1993) (distinguishing water-improvement districts from municipalities by focusing on "the creation of the governmental unit instead of its function," and noting the governmental function performed by the port authority, a political subdivision, might be a proprietary function if performed by the municipality).

[87] 461 S.W.3d 117, 127 (Tex. 2015) (rejecting the private contractor's contention that it was entitled to share in the toll road authority's sovereign immunity solely because the authority was statutorily authorized to engage the contractor's services and would have been immune had the authority performed those services itself).

[88] *Wasson I*, 489 S.W.3d 427, 432 (Tex. 2016).

corporations is not necessary to satisfy the political, pecuniary, and pragmatic policies underlying our immunity doctrines. Governmental immunity benefits the public by preventing disruptions of key governmental services, but economic development corporations are not tasked with performing essential services.[89] Rather, these entities are authorized for the limited purpose of promoting and developing enterprises to encourage employment and the public welfare.[90] And while the immunity doctrine respects the separateness of the branches of government, the Legislature expressly chose not to imbue economic development corporations with indicia of status as a distinct governmental entity. The Legislature simply did not grant these entities "powers of government" to perform essential governmental functions or activities.

Public fisc concerns likewise do not justify extending immunity from suit to economic development corporations. Economic development corporations may (but are not required to) fund projects using a percentage of local taxes, but even if the municipality elects to fund projects by assessing a tax, "[s]overeign immunity has never been defended as a mechanism to avoid any and all increases in public expenditures."[91] Rather, sovereign immunity is "designed to guard against the unforeseen expenditures associated with the government's defending lawsuits and paying judgments."[92] Because an economic development corporation's activities center on

---

[89] Whether a governmental function is "essential" is usually specified by statute. *See, e.g.*, TEX. HEALTH & SAFETY CODE § 772.113 ("The [emergency communication] district [in certain counties] is a public body corporate and politic, exercising public and essential governmental functions . . . ."); TEX. TRANSP. CODE § 452.052(a) ("[A regional transportation] authority: (1) is a public political entity and corporate body; . . . and (3) exercises public and essential governmental functions."); TEX. WATER CODE § 67.0105(b) ("The furnishing of a water supply and fire hydrant equipment by a governmental entity or a volunteer fire department directly or through another entity . . . is an essential governmental function . . . ."). The Development Corporation Act contains no similar language.

[90] *See* TEX. LOC. GOV'T CODE § 501.051(c) ("The specified public purpose must be limited to the promotion and development under this subtitle of enterprises to promote and encourage employment and the public welfare.").

[91] *Brown & Gay Eng'g*, 461 S.W.3d at 123.

[92] *Id.* (internal quotation marks omitted).

specific "projects" that have been designated in advance and memorialized by performance agreements and because the statutory scheme itself contains provisions limiting liability and financial exposure,[93] we perceive no genuine risk of unforeseen expenditures to be visited on the government.

When evaluating the nature and purposes of immunity, we remain ever mindful that "sovereign immunity places the burden of shouldering [the] costs and consequences [of improvident actions] on injured individuals."[94] Considering the Development Corporation Act as a whole, we conclude that the Legislature did not authorize municipalities to create economic development corporations as distinct governmental entities entitled to assert immunity in their own right. We have suggested, but never held, that a non-governmental entity can share a political subdivision's immunity derivatively.[95] The circumstances under which derivative immunity might exist are ill-defined in our jurisprudence, except to the extent we have held that the absence of any governmental control over a private contractor's work affirmatively precludes it.[96] Derivative immunity is a distinct analytical inquiry that the parties have not briefed—and the record is not developed on this point—so we do not consider it. We hold only that RDC does not independently possess governmental immunity as an arm of the state.

### III. Conclusion

Governmental immunity does not extend like ripples from a pebble tossed into a pond but, instead, is limited to those entities acting as an arm of state government. Despite fulfilling public

---

[93] *See* TEX. LOC. GOV'T CODE §§ 501.008 (limiting the incurrable financial obligations), 505.106 (limiting liability).

[94] *Brown & Gay Eng'g*, 461 S.W.3d at 121 (internal quotation marks and citation omitted).

[95] *Id.* at 126.

[96] *Id.*

purposes, economic development corporations do not exist quite like an arm of the state government, imbued with aspects of sovereignty such as immunity from suit. Moreover, the fundamental purposes of governmental immunity do not countenance immunizing economic development corporations like RDC from suit nor does the Development Corporation Act purport to contemplate the same. We therefore affirm the court of appeals' judgment.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** March 8, 2019