

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00234-CV

_____

LANCE HOWERTON, Appellant

V.

AMERICAN PRECISION AMMUNITION, LLC, A/K/A PRECISION
AMMUNITION AND MATTHEW CAMPBELL, Appellees

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CV-21-0594

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

**I. Introduction**

Appellees American Precision Ammunition, LLC, a/k/a Precision Ammunition and Precision's owner Matthew Campbell sued for common-law and statutory fraud, violations of the Deceptive Trade Practices Act (DTPA), tortious interference with contract and with prospective contractual relations, libel, slander, and disparagement after the City of Mineral Wells terminated Precision's tax-abatement agreement. Instead of suing the City, Appellees sued Appellant Lance Howerton, a now-retired city manager; the Mineral Wells Industrial Foundation Inc. (MWIF); the Mineral Wells/Palo Pinto County Area Growth Council (MWAGC); S.L.B., Inc.; Stephen L. Butcher, who was MWAGC's director, MWIF's recording secretary, and S.L.B.'s registered agent; and Richard Ball, MWIF's president. Appellees clarified in subsequent petitions that "[e]xcept as otherwise indicated, [they] seek recovery against Howerton only for his actions, omissions, representations, and statements made after [he] . . . retired from the City of Mineral Wells and during which time Howerton was only a private citizen."

Howerton filed a plea to the jurisdiction and, several months later, a motion to dismiss under Civil Practice and Remedies Code Section 101.106(f), asserting immunity from most of Appellees' claims.[1] *See* Tex. Civ. Prac. & Rem. Code Ann.

---

[1]The record does not reflect that the trial court ever ruled on Howerton's plea to the jurisdiction.

§ 101.106(f). Appellees responded in part that the challenged causes of action arose from Howerton's performance of a proprietary function on the City's behalf—recruitment of a business for economic-development purposes—and that a cause of action based on a proprietary function cannot be brought under the Texas Tort Claims Act (TTCA), preventing Section 101.106(f)'s application. The trial court denied Howerton's motion, and Howerton brought this accelerated appeal. *See id.* § 51.014(a)(5).

In a single issue, Howerton argues that the trial court erred by denying his motion. Because the trial court erred by denying the motion, we reverse the trial court's order and dismiss Appellees' fraud, DTPA, defamation, and disparagement claims that arose during Howerton's City employment. We remand the case to the trial court for further proceedings on Appellees' tortious-interference, defamation, and disparagement claims that arose after Howerton retired from the City.

## II. Background

According to Appellees' second amended petition,[2] in 2015, upon a recommendation from the Governor's Office of Economic Development, they investigated business-relocation incentives and met with local economic-development officials, including Howerton. The meetings culminated in a ninety-five-page December 2015 proposal for incentives to be made available to Precision "upon [its]

---

[2]Both parties' briefs refer us to Appellees' second amended petition as the live pleading when the trial court decided the motion.

3

decision to locate [its] new Headquarters & manufacturing operations" to Mineral Wells. Appellees attached the proposal to their pleadings.

The proposal stated that no final decision had been made about the incentive package's exact structure but that "certain assumptions have been made in this presentation to provide a basis to delineate the incentives" that the City "may potentially be able to put on the table" and that "[i]n most instances," references to the City, MWIF or MWAGC "simply reflect the overall community's efforts to support *Precision*." It listed a variety of potential financial incentives, including a property tax reduction, a Texas Capital Fund interest-free loan, a Texas Enterprise Grant or Project designation, and infrastructure grant funding, and stated that the package assumed that a bank would be willing to acquire industrial revenue bonds for the project, that there would be at least thirty-one new jobs created in the first three years, that the City would apply to the State for an interest-free loan, and that either an Enterprise Grant or Project designation would be available. *See generally* Tex. Gov't Code Ann. § 2264.001(3) (describing "public subsidy" as "a public program or public benefit or assistance of any type" designed to stimulate economic development or to create or retain jobs, including "grants, loans, loan guarantees, benefits relating to an enterprise or empowerment zone, fee waivers, land price subsidies, infrastructure development and improvements designed to principally benefit a single business or defined group of businesses, matching funds, tax refunds, tax rebates, or tax abatements").

By June 2016, MWIF, MWAGC, and the City promised an economic-incentive package that included the conveyance of land and a tax abatement.[3] Appellees attached "a portion of the revised proposal" and the June 15, 2016 offer letter to their pleadings,[4] as well as a copy of the tax-abatement agreement. *See generally* Tex. Tax Code Ann. § 312.204 ("Municipal Tax Abatement Agreement").

On July 5, 2016, the city council passed a resolution approving the tax-abatement agreement between the City and Precision. *See id.* § 312.002. The tax-abatement agreement referenced the land, the required capital investment, the required number of employees to be hired, and the deadline for making improvements.[5]

The tax-abatement agreement provided that if Precision failed to notify the City in writing on or before the completion deadline that the required improvements had been completed or if the City could not verify that they were completed by the

---

[3]Appellees alleged that at some point during the parties' relationship, Howerton told Appellees that the City no longer had funds to participate as represented and that MWAGC's director Butcher had overreached his authority.

[4]MWIF's June 15, 2016 letter stated that it would provide a $700,000 grant "in the form of the eighty-eight[-]acre tract of land . . . as part of a comprehensive economic incentive package" to Precision "for use of the site for [Precision's] factory," which would be deeded to Precision free and clear of liens on or before June 29, 2016. The letter further stated that if the project was not realized "as evidenced by a certificate of occupancy issued by August 2017," Precision agreed to reimburse MWIF, sell the property and repay MWIF, or deed the property to MWIF.

[5]The record contains two versions of the tax-abatement agreement, one of which Appellees claim was fabricated in 2018.

completion deadline, "the City shall have the right to terminate this Agreement upon provision of written notice to [Precision]." It also set out other events of default and contained a merger clause declaring that the agreement and its exhibits contained the parties' entire agreement.

According to Appellees, at Howerton's request, the City refused to issue an unrestricted certificate of occupancy until the spring or summer of 2018 despite Appellees' having satisfied all requirements. Appellees also asserted that in July 2018, when Campbell met with Howerton to discuss the economic-incentive package, Howerton told Campbell that Appellees had missed their deadline and then, when Campbell corrected him, Howerton "became visibly agitated and stated he would need to speak with Butcher to get clarification by the end of the following week." On July 17, 2018, the City revoked the tax-abatement agreement. On July 22, 2018, the Dallas Morning News published an article about Appellees in which Butcher "disparaged" them, and Appellees alleged that "[t]his type of disparagement" continued consistently and frequently by Butcher, Howerton, and others.

Appellees alleged that Howerton "continued to disparage" them "even after he was no longer City Manager" and that as a result of such disparagement, "a number of actual and potential vendors, suppliers, customers, and purchasers of real property of [Precision] have reconsidered engaging or declined to engage in business with [Precision]." They listed twelve entities, including companies, another city, and two states.

6

In the "causes of action" section of their pleadings, Appellees argued that Howerton had committed common-law and statutory fraud by making false representations of past or existing material fact to induce them to enter the contract, that he had made material and false promises to induce them to enter the contract, and that he knew the representations and promises were false and intended that they rely on them. They listed the following: (1) false representations regarding MWIF and MWAGC's ability to convey land; (2) false promises about financial support; and (3) false representations regarding the purchase price of other property, which was changed at closing to reflect an artificially inflated purchase price with a gift back to Precision.

They also argued that Howerton had violated the DTPA by causing confusion or misunderstanding as to the source or approval of services and as to the affiliation, connection, or association with another; by representing that services had the approval, characteristics, uses, or benefits they did not have; by advertising services with the intent not to sell them as advertised; by representing that the agreement conferred or involved rights, remedies, or obligations that it did not have or involve, or that were prohibited by law; and by failing to disclose information concerning services that was known at the time of the transaction when such failure to disclose was intended to induce Appellees into a transaction they would not have entered had the information been disclosed.

They asserted in their tortious-interference claims that Precision had various contracts with vendors, suppliers, and customers with which Howerton willfully and intentionally interfered and that Precision had a reasonable probability to enter business relationships with various vendors, suppliers, customers, and real-property purchasers with which Howerton had intentionally interfered through independently tortious conduct. They specifically alleged, "Howerton intentionally interfered through independently tortious conduct after he was no longer the City Manager of Mineral Wells, when he was a private citizen, and while his residence was in Parker County."

And in their "libel/slander/disparagement" claim, Appellees asserted that Howerton had published statements of fact about them to third parties orally and in writing that were per se defamatory, false, and without privilege regarding Appellees' economic interests and that Howerton did so "both during his time as City Manager of Mineral Wells as well as after he was no longer the City Manager of Mineral Wells, when he was a private citizen."

Appellees also listed Howerton as a beneficiary and ratifier of fraud, claimed that he had conspired with Butcher, S.L.C., MWIF, and MWAGC, and asserted that he had knowingly and intentionally aided and abetted the commission of tortious conduct.

In his Section 101.106(f) motion to dismiss, Howerton argued that he was entitled to dismissal of the claims against him that arose from his alleged actions while

8

employed as city manager, i.e., the claims "other than Howerton's alleged acts that tortiously interfered with [Appellees'] contracts, and other than alleged defamatory statements published after he resigned as City Manager." Howerton asserted that other than the post-retirement tortious-interference and defamation claims, the remaining claims could have been brought under the TTCA against the City.

In their May 31, 2022 response, Appellees argued that Howerton was not entitled to a Section 101.106(f) dismissal because their "Third Amended Petition"[6]

_____

[6]The trial court's June 1, 2022 order states that it denied the motion "[a]fter considering the Motion; the response thereto; the live petition of Plaintiffs; and the arguments of counsel, and after taking judicial notice as requested in the response." We have supplemented the record with the third amended petition, which merely clarifies that Appellees sought recovery from Howerton for tortious interference and defamation in his post-retirement activities and recovery against him on all of their causes of action (fraud, DTPA, tortious interference, and defamation) "insofar as the City . . . was performing a proprietary—not governmental—function in connection with the facts giving rise to the liability of the City and Howerton." Because the third amended petition was not filed until October 14, 2022—several months after the May 31, 2022 hearing and June 1, 2022 order—we treat the second amended petition as the live pleading despite Appellees' references to the third amended petition in their response to Howerton's motion. *See Edcouch-Elsa ISD v. Cabrera*, No. 13-21-00365-CV, 2022 WL 3257377, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 11, 2022, no pet.) (mem. op.) (discussing amended pleadings).

We also note that this was not the first time Appellees had argued that a subsequently filed petition mooted some of Howerton's immunity arguments. Howerton had filed a plea to the jurisdiction in January 2022 in which he argued that the trial court should dismiss some of the claims against him based on governmental immunity and Section 101.106(f). Appellees filed their second amended original petition and their response to the plea to the jurisdiction on March 14, 2022, the same day that Howerton's plea was set for a hearing. In their response, they adopted their second amended petition by reference and argued that it mooted Howerton's plea "in its entirety with respect to the tortious interference and defamation causes of action" and that—as they argued in their response to the Section 101.106(f) motion—

9

mooted the motion as to their tortious-interference and defamation claims "insofar as the facts giving rise to these causes of action occurred after Howerton had retired from the City . . . and during which time Howerton was only a private citizen" and that Howerton did not enjoy governmental immunity on the remaining claims because the TTCA did not apply to a municipality's liability for damages arising from proprietary functions, citing *Rosenberg Development Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 741 (Tex. 2019). They also argued that they were not suing under the TTCA because the City had been performing a proprietary function, citing Section 101.0215(b), which states that the TTCA does not apply to the liability of a municipality for damages arising from its proprietary functions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b).

## III. Discussion

Appellees frame the issue as Howerton's Section 101.106(f) dismissal motion's turning "on whether recruiting a business to relocate to the municipality to stimulate economic growth and development is a governmental function or proprietary function." As set out below, we do not agree that this is the first step in the analysis to

---

Howerton did not enjoy governmental immunity for the fraud and DTPA claims because the City had been performing a proprietary, not governmental, function. They clarified in their response that their statutory and common-law fraud claims and DTPA claims against Howerton were based on his misrepresentations and omissions as to the tax-abatement agreement, which they argued was a proprietary function for which he had no immunity. Howerton filed his Section 101.106(f) motion to dismiss after Appellees filed their second amended petition.

10

determine whether a municipal employee at the time of the alleged tortious conduct is entitled to dismissal of those claims based on governmental immunity.

The TTCA provides a limited waiver of governmental immunity. *See id.* § 101.023; *Alexander v. Walker*, 435 S.W.3d 789, 790 (Tex. 2014). Section 101.106, the TTCA's election-of-remedies provision, requires in Subsection (f) that courts grant a motion to dismiss a lawsuit against a governmental employee sued in an "official capacity," allowing the governmental unit to be substituted for the employee. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f); *Garza v. Harrison*, 574 S.W.3d 389, 393 (Tex. 2019); *see also Alexander*, 435 S.W.3d at 790 (stating that the TTCA compels dismissal of government employees when suit should have been brought against the government).

On the employee's motion, if the employee is entitled to dismissal, the plaintiff must file an amended pleading dismissing the employee and naming the governmental unit as defendant within thirty days of the motion, and if the plaintiff does not, the suit against the employee must be dismissed. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). To obtain a dismissal under Section 101.106(f), the governmental employee must show that the suit (1) is based on conduct within the general scope of his or her employment and (2) "could have been brought under [the TTCA] against the governmental unit." *Id.*; *Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 417 (Tex. 2015); *see also Garza*, 574 S.W.3d at 393–94 ("By adopting [S]ection

101.106(f), the Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct.").

As a subdivision of the State, a municipality is liable under the TTCA for damages arising from its governmental functions. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a); *Rosenberg Dev. Corp.*, 571 S.W.3d at 741 ("As an extension of sovereign immunity, governmental immunity protects political subdivisions performing governmental functions as the state's agent."). But the TTCA's waiver does not apply to the liability of a municipality for damages arising from its proprietary functions, "which are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b).[7] We review de novo the denial of a Section 101.106(f) motion to dismiss. *Garza*, 574 S.W.3d at 400.

---

[7]Appellees refer us to *Rosenberg*, in which the supreme court held that a municipally created economic development corporation (EDC) is not a governmental entity and therefore not entitled to governmental immunity. 571 S.W.3d at 741. In *Rosenberg*, a Type B EDC was created by a city to promote economic and industrial development activities and promote or develop new or expanding businesses. *Id.* The EDC executed a contract with a nonprofit organization for various services. *Id.* at 741–42. When the EDC denied a requested extension, the nonprofit sued it for breach of contract and declaratory judgment. *Id.* at 742. The EDC filed a plea to the jurisdiction based on immunity from suit, among other arguments. *Id.* After examining the Development Corporation Act as a whole, the court concluded that the legislature did not authorize municipalities to create EDCs as distinct governmental entities entitled to assert immunity. *Id.* at 751. But the issue here is whether an employee of a municipality—not a municipally created EDC—is entitled to governmental immunity.

Here, we are called to weigh in on what Appellees argue is a conflict between the supreme court's statement in *Alexander* that, barring an independent statutory waiver of immunity, tort claims against the government are brought under the TTCA "for subsection (f) purposes even when the TTCA does not waive immunity for those claims," 435 S.W.3d at 792, and Appellees' argument that before the TTCA is triggered at all, the cause of action must be based on a governmental—not proprietary—function, citing Civil Practice and Remedies Code Section 101.0215(b). Appellees contend that Section 101.106(f) does not apply to causes of action against a governmental employee that fall outside the TTCA's scope.

The supreme court addressed the proper Section 101.106(f) analysis in *Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011), in which it expressly held that *all* common-law tort theories alleged against a governmental unit are assumed to fall under the TTCA for Section 101.106 purposes. *Id.* at 369 (quoting *Mission Consol. ISD v. Garcia*, 253 S.W.3d 653, 658–59 (Tex. 2008)). "[F]or section 101.106(f), suit 'could have been brought' under the [TTCA] against the government regardless of whether the [TTCA] waives immunity from suit."[8] *Id.* at 385. Therefore, in reviewing a Section 101.106(f)

---

[8]In *Franka*, while delivering the plaintiffs' son at a public teaching hospital, the defendant doctors accidentally snapped the baby's clavicle. 332 S.W.3d at 369–70. The plaintiffs sued the doctors, but not the hospital, the county hospital district that operated the hospital, or the University of Texas Health Science Center, which provided the hospital's staff. *Id.* at 370. Franka, one of the doctors, moved to dismiss the action under Section 101.106(f), and the plaintiffs acknowledged that he was employed by a governmental unit—UTHSC—and that their suit was based on conduct within the general scope of his employment, but they argued that their suit

13

motion, the court must ask: Was the governmental employee acting within the scope of his employment, and is the plaintiff's claim in tort and not under a non-TTCA statute that independently waives immunity?[9] *Id.* at 381; *Frick v. Jergins*, 657 S.W.3d 840, 848 (Tex. App.—El Paso 2022, no pet.) (citing *Franka* for the proposition that the "if-it-could-have-been-brought" requirement does not refer to only those tort

could not have been brought under the TTCA because their child's injury was not caused by a condition or use of tangible personal property. *Id.* at 370–71. The trial court denied the motion, and the court of appeals affirmed, holding that a governmental employee is not entitled to dismissal under Section 101.106(f) until he has established that his employer's immunity from suit has been waived by the TTCA. *Id.* at 371.

The supreme court reversed based on its precedent that "firmly establish[ed] the rule that *any* tort claim against the government is brought 'under' the [TTCA] for purposes of section 101.106, even if the [TTCA] does not waive immunity." *Id.* at 375 (emphasis added). It further noted that suit is brought under the TTCA when it is filed, "not when waiver of immunity by the [TTCA] is established." *Id.* at 380. The court noted that requiring a governmental employee to prove that his or her employer's immunity from suit had been waived in order to obtain dismissal would force the parties "to take unexpected positions with collateral risks," such as forcing the plaintiff to argue that immunity was not waived, thereby cutting off his or her path to liability and recovery. *Id.*; *see also Deleon v. Villareal*, No. 02-19-00133-CV, 2020 WL 98142, at *4 (Tex. App.—Fort Worth Jan. 9, 2020, pet. denied) (mem. op.) (holding, under *Alexander* and *Franka*, that the appellant's negligence and intentional-infliction-of-emotional-distress claims could have been brought under the TTCA against the appellees' city employer even if the TTCA did not waive immunity for those claims).

[9]The DTPA does not clearly and unambiguously provide for a waiver of immunity from suit for governmental units. *Kojo Win Nkansah v. Univ. of Tex. at Arlington*, No. 02-10-00322-CV, 2011 WL 4916355, at *4 (Tex. App.—Fort Worth Oct. 13, 2011, pet. denied) (per curiam) (mem. op. on reh'g). Thus, for TTCA purposes, a DTPA claim is a tort claim. *See Owens v. City of Tyler*, No. 12-21-00009-CV, 2021 WL 4617790, at *7 (Tex. App.—Tyler Oct. 6, 2021, no pet.) (mem. op.) ("[T]he Texas Supreme Court has recognized that statutory torts do exist."). "The statutory fraud act also does not waive governmental immunity and is considered a tort." *Id.*

claims for which the TTCA waives immunity). The immunity issue need not be determined until the governmental unit is in the suit and the issue can be fully addressed. *Franka*, 332 S.W.3d at 381; *see Frick*, 657 S.W.3d at 848 (holding that appellant's libel and malicious-prosecution claims were tort claims that could have been asserted against the appellee's governmental employer and that "just because the TTCA does not waive immunity for a specific claim does not mean that such a claim was not brought under the TTCA").

A governmental employee is entitled to dismissal when the employee furnishes conclusive evidence that he or she was acting within the scope of his or her employment without regard to his or her subjective intent or state of mind. *See Laverie v. Wetherbe*, 517 S.W.3d 748, 750, 753 (Tex. 2017) (op. on reh'g) (holding that governmental employee does not have to offer evidence of the employee's motives for making allegedly defamatory statements). "Scope of employment" is "the performance for a governmental unit of the duties of an employee's office of employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *Id.* at 752 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5)). The scope-of-employment analysis is fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? *Id.* at 753.

Further, the scope-of-employment inquiry under Section 101.106(f) focuses on whether the employee was doing his or her job, not the quality of the job

performance—that is, even if work is performed wrongly or negligently, the inquiry is satisfied if, when viewed objectively, a connection exists between the employee's job duties and the alleged tortious conduct. *Garza*, 574 S.W.3d at 394. Public employees act within the scope of their authority if they are discharging the duties generally assigned to them. *Slaven v. Livingston*, No. 02-17-00266-CV, 2019 WL 983693, at *11 (Tex. App.—Fort Worth Feb. 28, 2019, no pet.) (mem. op.).

No one disputes that Howerton was acting within the scope of his employment when he allegedly committed fraud and DTPA violations and made some alleged defamatory statements, all of which are tort claims. *See Franka*, 332 S.W.3d at 381. Therefore, upon the filing of Howerton's Section 101.106(f) motion, Appellees should have dismissed those claims against him and named the City as defendant in his place within thirty days. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Upon the City's substitution as defendant, the dichotomy between governmental and proprietary functions in the cases referenced by Appellees—*Rosenberg, Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142 (Tex. 2018) (op. on reh'g), *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427 (Tex. 2016), and *City of Westworth Village v. City of White Settlement*, 558 S.W.3d 232 (Tex. App.—Fort Worth 2018, pet. denied)—would be reached. *See Franka*, 332 S.W.3d at 381 (explaining that the immunity issue need not be determined until the governmental unit is in the suit). Because Appellees did not amend their pleadings to dismiss Howerton and name the City in his place within thirty days of Howerton's motion to dismiss, the trial court was required to dismiss

16

those claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). We sustain Howerton's sole issue.

## IV. Conclusion

Having sustained Howerton's sole issue, we reverse the trial court's order and dismiss the fraud and DTPA claims against him and the defamation claims based on his actions as a city employee. We remand the case to the trial court for further proceedings regarding the tortious-interference and defamation claims that arose after Howerton retired from the City.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: April 13, 2023

17