**Affirmed and Opinion filed February 17, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00222-CV

**MARY JENNETTE JACKSON HUNNICUTT AND CLIFFORD A. JACKSON, Appellants**

**V.**

**THE CITY OF WEBSTER AND DIRECTOR OF ECONOMIC DEVELOPMENT BETSY GIUSTO, Appellees**

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2018-52445**

## O P I N I O N

Appellants Mary Jennette Jackson Hunnicutt and Clifford Jackson filed suit against the City of Webster and its Director of Economic Development, Betsy Giusto, alleging that Giusto came to Hunnicutt's home and made false promises and representations to Hunnicutt in order to induce Hunnicutt to convey her interest in 4.111 acres of a larger tract of land owned by Hunnicutt and Jackson to the City. Two years after the conveyance, appellants filed suit in district court

seeking declaratory relief that Hunnicutt's conveyance of the 4.111 acres is void, or alternatively for recission of her conveyance. Appellants argued in the trial court that governmental immunity was not applicable because the City was acting in a proprietary function, rather than in a governmental function. Appellants also sought declaratory relief on an ultra-vires claim against Giusto for making "false representations and promises in order to intentionally, fraudulently, unlawfully, and maliciously induce [Hunnicutt] into executing the Warranty Deed."

On appeal, Hunnicutt and Jackson challenge the actions of the trial court in granting the City's plea to the jurisdiction and rendering judgment in favor of the City and Giusto. We affirm the judgment of the trial court.

## I. BACKGROUND

In 2016, Hunnicutt and Jackson were co-owners of a 23.5-acre tract of land in the City of Webster that fronted Interstate Highway 45. Hunnicutt owned two thirds of the property; her brother, Jackson, owned the remaining one third. This land was adjacent to a regional retail and entertainment destination in development by the City. Neither Hunnicutt nor Jackson resided on the property, though the land had been owned by their family for several generations.

According to appellants' pleadings, in 2016, Giusto, the director of economic development for the City, called Hunnicutt and advised that she was going to stop by Hunnicutt's home to get something signed. Hunnicutt and Giusto allegedly had a long-standing working relationship as Hunnicutt owned other large parcels of property in the area and Giusto had been involved in Hunnicutt's previous sale of property for development. Hunnicutt further alleged that Giusto made false promises and representations to Hunnicutt and ultimately coerced Hunnicutt to sign a general warranty deed conveying 4.111 acres of her 23.5-acre tract to the City. Hunnicutt asserts that she was fraudulently induced to sign the

2

deed and the deed is void because there was no consideration and no meeting of the minds. Hunnicutt alleges that when she initially refused to the sign the deed without her brother, Giusto advised her that as the majority owner of the property Hunnicutt did not need Jackson's signature. Hunnicutt asserts that Giusto further stated the deed would be voided if Jackson did not agree to convey his interest in the land. The City did not pay for the 4.111-acre tract; however, the City argues that Hunnicutt received consideration in the form of improvements and infrastructure that increased the value of appellants' remaining acreage.

Jackson did not convey his one-third interest in the 4.111-acre tract to the City. Two years later, the City began construction of a road on the property. After construction began, Hunnicutt and Jackson filed this lawsuit seeking declaratory relief voiding Hunnicutt's conveyance of the 4.111 acres, bringing an action for recission, and asserting an ultra-vires claim against Guisto.[1] The City filed a plea to the jurisdiction on all of appellants' claims, which was granted by the trial court. The trial court rendered a final judgment dismissing "any and all claims."[2]

---

[1] Appellants' original petition also included an inverse-condemnation claim. However, appellants amended their petition to remove that claim because in Harris County inverse-condemnation actions may only be maintained in a county court at law. Tex. Gov't Code Ann. § 25.1032(c) ("A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, if the amount in controversy in a statutory proceeding does not exceed [$250,000] in civil cases."). Appellants filed suit in June 2019 in Harris County Civil Court at Law No. 2, bringing an inverse-condemnation claim against the City, as well as seeking recission of the general-warranty deed in which Hunnicutt conveyed the 4.111 acres in dispute to the City. The City filed a plea to the jurisdiction on Hunnicutt's two claims in that proceeding, which was denied by the trial court. The City appealed the trial court's ruling, which is also before this court in case number 14-20-00421-CV.

[2] The language used by the trial court in the final judgment reflects the intent to "unequivocally" and "expressly dispose[] of all claims and all parties." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93, 200 (Tex. 2001).

3

## II.    ANALYSIS

### A.    Standing of Jackson

Because standing is a threshold issue that is implicit in the concept of subject-matter jurisdiction, we first address Jackson's standing even though it was not raised by any party to this appeal. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). In addressing standing, we review the plaintiff's pleadings to determine whether the petition alleges facts that affirmatively demonstrate our jurisdiction to hear the case. *See id*. at 446. In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court. *Heckman v. Williamson Cty*., 369 S.W.3d 137, 154–55 (Tex. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

We discern no justiciable controversy between Jackson and either of the appellees. The suit filed by Jackson and Hunnicutt alleges that Giusto made false promises and representations to Hunnicutt in order to induce Hunnicutt to convey her interest in the 4.111 acres to the City and seeks a declaration that the conveyance is void. However, Jackson was not a party to the conveyance of the 4.111 acres by Hunnicutt to the City and does not allege that his ownership interest in the 4.111 acres is affected by the outcome of the suit. Further, Jackson was not present during the meeting between Giusto and Hunnicutt. There are no facts asserted in appellants' live pleadings that establish any standing by Jackson in this lawsuit. Concluding that Jackson has no standing to bring or maintain the claims asserted against the City and Giusto, we hold the trial court had no jurisdiction to consider Jackson's claims against the City and Giusto and affirm the dismissal of his claims.

In contrast, Hunnicutt's pleadings establish a concrete injury between her

and the City concerning her conveyance of the 4.111 acres. We now address Hunnicutt's claims on appeal.

## B. Standard of review

Subject-matter jurisdiction is a question of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Texas Air Control Bd*., 852 S.W.2d at 446. We review a trial court's ruling on a plea to the jurisdiction de novo to determine whether the plaintiff met this burden. *See City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008); *Miranda*, 133 S.W.3d at 226.

When, as here, a plea to the jurisdiction challenges the pleadings, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Heckman*, 369 S.W.3d at 150; *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009); *Miranda*, 133 S.W.3d at 226.

The allegations found in the pleadings may either affirmatively demonstrate or negate the court's jurisdiction. *See Miranda*, 133 S.W.3d at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then the court may grant a plea to the jurisdiction as a matter of law without giving the plaintiff an opportunity to amend. *Id*. at 227.

## C. Hunnicutt's claims against the City

In issue 1, Hunnicutt argues the trial court erred in granting the City's plea to

the jurisdiction because the City failed to establish its governmental immunity. Hunnicutt further asserts that the City was acting in a proprietary function, rather than a governmental function, and therefore governmental immunity does not apply to shield the City from liability.

### 1. Governmental immunity

Sovereign and governmental immunity are common-law concepts that generally protect the State and its political subdivisions from the burdens of litigation. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).

Governmental immunity has two components: "immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit implicates a court's subject-matter jurisdiction to decide a claim against a governmental entity. *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 746 (Tex. 2019). When a governmental defendant challenges jurisdiction on immunity grounds, the plaintiff has the burden to "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Immunity is waived only by clear and unambiguous language. *See* Tex. Gov't Code Ann. § 311.034 ("[A] statute shall not be construed as a waiver of [] immunity unless the waiver is effected by clear

6

and unambiguous language.").

## 2. The City was engaged in a governmental function

There is a long-standing principle in Texas law that a distinction exists between municipalities and other governmental units for governmental-immunity purposes. *See City of Galveston v. Posnainsky*, 62 Tex. 118, 126 (1884) ("Counties . . . are created by the legislature by general laws without reference to the wish of their inhabitants, and thus for essentially public purposes" whereas cities are incorporated through special charters and are "enacted at the request of those who are to be most directly benefited by them and with a view to this end."). Municipalities are an exception to the general rule of governmental immunity because a municipality is not immune for its proprietary functions. *See Tooke*, 197 S.W.3d at 343.

We conduct a two-step inquiry to determine whether a municipality has immunity from suit. *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 435 (Tex. 2016) (*Wasson I*). First, we determine whether the function is governmental or proprietary. *See id.* And, if the function is governmental, we determine whether immunity is waived by the legislature. *See id.*

In its plea to the jurisdiction, the City maintained that it was unquestionably acting in its governmental function because its actions were to develop and construct streets, actions defined by the legislature as governmental functions. Hunnicutt argued below, and here on appeal, that the City's analysis was incomplete because the City was still required to justify its governmental function with the four-factor test articulated by the supreme court in *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 150 (Tex. 2018) ("*Wasson II*"). Relying primarily on *Wasson II*, Hunnicutt argues that acquiring appellant's property was not closely related to or necessary for an essential government function because the

7

City could have built the roads on land not owned by appellant or designed the access roads differently. *Id*. at 153. Hunnicutt maintains the City's actions were not closely related to a governmental function because the City had discretion to develop access roads differently. We disagree with Hunnicutt's articulation of the analysis for a governmental function.

We begin with the Texas Tort Claims Act, in which the legislature has specifically defined various activities as governmental. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a) ("A municipality is liable . . . for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty."). Governmental functions of a municipality, i.e., functions given to the municipality by the state, include street construction and design, street maintenance, and community development. *Id*. § 101.0215(a)(3), (4), (34).[3] If a function has been designated by the legislature as one given to the municipality by the state as part of the state's sovereignty, we have no discretion to determine that it is proprietary. *City of Houston v. Downstream Envtl., L.L.C*., 444 S.W.3d 24, 33 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see Wasson II,* 559 S.W.3d at 150 ("Because the Tort Claims Act does not enumerate leasing property as a governmental or a proprietary function, we must apply the general definitions.").[4]

---

[3] *See* Tex. Const. art. XI, § 13(a) ("Notwithstanding any other provision of this constitution, the legislature may by law define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law.").

[4] In *Wasson II*, the City of Jacksonville leased lakefront property to the plaintiffs. After the City terminated the plaintiffs' lease and issued an eviction notice, the plaintiffs sued for breach of contract and sought declaratory and injunctive relief. The supreme court held that the nature of the City's activity was proprietary after considering that four factors outlined in Civil Practice and Remedies Code section 101.0215, and concluded the lease of the lakefront property was not essential to the maintenance or operation of the lake itself. *Id*. at 150, 153–54 (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)). However, in *Wasson II*, the supreme court

The list is not exclusive; therefore, if a function is not specifically designated as either governmental or proprietary, courts apply the section's general definitions to determine the nature of the activity. *See Wasson II*, 559 S.W.3d at 150. However, when the activity at issue is specifically enumerated as a governmental function by the legislature in the Texas Tort Claims Act, the parties need not additionally determine whether the activity or action *also* meets the general definitions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a); *Wasson II*, 559 S.W.3d at 150.

Here, street construction and design are specifically identified as governmental functions in the Texas Tort Claims Act. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(3). Hunnicutt alleges the City could have built in a slightly different location and did not need to use four acres of appellant's land to create the roads. However, the fact that the City could have used a different piece of property on which to build the roads or designed the roads differently does not convert the City's governmental function of designing and building roads into a proprietary function. We conclude that the City was performing a governmental function when it solicited, designed, and constructed the roads on the property that Hunnicutt conveyed to the City.

### 3. Hunnicutt does not establish any waiver of governmental immunity

Having determined that governmental immunity applies to Hunnicutt's claim against the City, we must determine whether the legislature waived immunity. On appeal, Hunnicutt never discusses a waiver of governmental immunity. However, in the trial court, she pleaded for relief under the Uniform Declaratory Judgments Act (UDJA) which does waive governmental immunity for some claims. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.002(b), 004(a).

---

analyzed the four factors in section 101.0215 because the Texas Tort Claims Act did not specifically identify leasing city land as a governmental function. *Id*. at 150.

The UDJA is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b). The UDJA provides:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). While the UDJA waives immunity for claims challenging the validity of ordinances or statutes, it is not a general waiver of immunity. *See id.* § 37.006(b); *Heinrich*, 284 S.W.3d 366, 373 n.6 (noting that UDJA waives immunity for claims challenging validity of ordinances or statutes). The UDJA does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature. *Texas Parks and Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011) (recognizing declaratory-judgments act is merely procedural device for deciding cases already within court's jurisdiction). Consequently, governmental immunity will bar an otherwise proper UDJA claim that has the effect of establishing a right to relief against a governmental entity for which the legislature has not waived governmental immunity. *See City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) (per curiam).

Hunnicutt's claim for declaratory relief seeks to invalidate her conveyance of the 4.111 acres based on her argument that no consideration existed for the deed and there was no meeting of minds. She specifically sought relief from the trial court in the form of a declaration that she and her brother were the rightful owners of the land. However, the exclusive method for determining the title to real

10

property is a trespass-to-try-title action. Tex. Prop. Code Ann. § 22.001. When a plaintiff brings a dispute pleaded as declaratory judgment, we must look to the substance and not the form of the claimant's petition to determine whether a claim sounds in trespass to try title. *Brumley v. McDuff*, 616 S.W.3d 826, 833 (Tex. 2021). Here, Hunnicutt asserts that she is the rightful owner of the property and seeks to have the property returned to her. Therefore, Hunnicutt effectively alleges a trespass-to-try-title action.

However, such a suit against the City is barred by governmental immunity absent legislative consent. *See Sawyer Trust*, 354 S.W.3d at 389–90. Hunnicutt has not articulated a legislative waiver of governmental immunity for her claims. Therefore, notwithstanding the manner in which they are pleaded, Hunnicutt's claims for declaratory relief are claims against the City to determine title to the 4.111 acres previously conveyed by Hunnicutt to the City and are barred by governmental immunity. *Id.*

### 4. Claim for recission

Hunnicutt also sought recission of the deed conveying the 4.111 acres to the City through an "action for rescission." Rescission is merely the "common, shorthand name" for the composite remedy of rescission and restitution. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012) (citing Restatement (Third) of Restitution and Unjust Enrichment § 54 cmt. a (Am. Law Inst. 2011)); *see also Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 344 (Tex. 2011) (rescission is a remedy). A party seeking rescission and restitution must first establish a substantive right to avoidance of the transaction in question. *See* Restatement (Third) of Restitution and Unjust Enrichment § 54 cmt. a (Am. Law Inst. 2011). Because Hunnicutt has not argued or articulated a viable claim against the City, we cannot consider Hunnicutt's request for recission of her conveyance to

the City.

We overrule issue 1.

**D.     Ultra-vires claim against Giusto**

In issue 2, Hunnicutt argues that the trial court erred in granting the City's plea to the jurisdiction as to her ultra-vires claim against Giusto. "A suit against a governmental employee in an official capacity is effectively a suit against the employing governmental unit, except in those cases alleging the employee has acted ultra vires." *Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019).

To state a claim under the ultra-vires exception, the plaintiff must allege and prove that the named official or governmental employee acted without legal authority or failed to perform a ministerial act. *Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018); *see Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (explaining ultra-vires action may be brought against government official only for nondiscretionary acts not authorized by law). "Ultra vires claims depend on the scope of the state official's authority." *Hall v. McRaven*, 508 S.W.3d 232, 234 (Tex. 2017). The standard for an ultra-vires act is whether it was done without legal authority, not whether it was correct. *Id.* at 243. Therefore, it is not an ultra-vires act for an official to make an erroneous decision within the authority granted. *Id.* at 242.

Hunnicutt does not allege that Giusto lacked authority to meet with her regarding development plans for the area or her conveyance of the 4.111 acres. Instead, Hunnicutt alleges that City wanted the 4.111 acres and Giusto engaged in tortious behavior in order to secure the land. Hunnicutt specifically alleges Giusto made "a number of false representations and promises in order to intentionally, fraudulently, unlawfully, and maliciously induce [Hunnicutt] into executing the

12

Warranty Deed" in order to take Hunnicutt's land. Hunnicutt further alleges that Giusto "violated the standards set for the Director of Economic Development by the City of Webster's own Code of Ordinances and committed common law fraud as well as fraud in a real-estate transaction."[5] [6]

Hunnicutt's allegations in this lawsuit involved tortious conduct. However, the Texas Tort Claims Act does not waive immunity for the intentional torts of a governmental entity or its employees. Tex. Civ. Prac. & Rem. Code Ann. § 101.057. Further, a public servant is not entitled to indemnification from the state if that employee engaged in willful or wrongful conduct.[7] *See* Tex. Civ. Prac. & Rem. Code Ann. § 104.002 (state liability for conduct covered). Although our precedent uses broad language (e.g., "[t]o fall within this ultra vires exception, a suit must . . . allege, and ultimately prove, that the officer acted without legal authority") in describing the parameters of ultra-vires claims, there is a distinction between a public servant acting without legal authority and engaging in tortious or wrongful behavior. *Heinrich*, 284 S.W.3d at 372; *see Ex parte Young*, 209 U.S. 123, 159 (1908) ("[T]he use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one

---

[5] Hunnicutt also argues that her pleadings allege that Giusto exceeded the bounds of her granted authority. However, Hunnicutt's pleadings do not establish Giusto's authority. Though Hunnicutt cites to an ordinance from the City which provides for the creation and responsibility of the Department of Economic Development, the ordinance is silent as to the role and authority of the Director of Economic Development. However, Hunnicutt's factual allegations do not establish that Giusto acted outside her granted authority. Rather, they allege that she engaged in tortious conduct.

[6] Hunnicutt does not specifically state in which capacity she sued Giusto. Our supreme court has instructed that it is appropriate to look to the pleadings as "the nature of the liability sought to be imposed" is typically determinative. *See Heinrich*, 284 S.W.3d at 377 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Giusto is identified in appellants' pleadings as "Director of Economic Development Betsy Giusto." Further, the relief sought by Hunnicutt is all against the City, reflecting that Giusto is sued in her official capacity.

[7] As she was in the trial court, Giusto is represented in this appeal by counsel provided by the City.

which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional."). None of the cases relied on by Hunnicutt hold that a valid ultra-vires claim can be maintained on the basis of tortious conduct.[8] Though Hunnicutt argues that appellants' pleadings clearly state that Giusto acted without legal authority, merely asserting legal conclusions or labeling a defendant's actions as "ultra vires" or "without legal authority" is not sufficient—"what matters is whether the facts alleged constitute actions beyond the governmental actor's statutory authority, properly construed." *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.).

Though framed as an ultra-vires claim, Hunnicutt seeks to "circumvent the admittedly harsh barrier of governmental immunity" and hold the City liable for the allegedly tortious or unlawful behavior of a public servant. *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 595 (Tex. App.—Austin 1991, writ denied), *abrogated on other grounds by Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401,

---

[8] *Heinrich*, 284 S.W.3d at 369–372 (widow challenged retroactive reduction in benefits by pension fund); *see also Chambers-Liberty Ctys. Nav. Dist. v. State*, 575 S.W.3d 339, 348–355 (Tex. 2019) (ultra-vires claims against commissioners of coastal-navigation district by State alleging district exceeded its legal authority by entering into lease of certain submerged land when right to enter that lease belonged to different state department); *McRaven*, 508 S.W.3d at 234, 235–37 (ultra-vires claim against chancellor alleging chancellor exceeded his granted authority in applying applicable laws and withholding records); *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158–61 (Tex. 2016) (railroads alleged City's director of public works acted without legal authority in making determination of status of railroad's property with regard to drainage fees); *Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 588 (Tex. 2015) (utility company alleged that county commissioners acted ultra vires by refusing to accept responsibility for repayment of relocation costs in violation of statutory duty); *Sawyer Trust*, 354 S.W.3d at 393–94 (plaintiff sought declaratory judgment against State that streambed on its property was not navigable; however, while court dismissed claim as barred by sovereign immunity, it held plaintiff should have right to amend and assert ultra-vires claim against state actors claiming streambed to be navigable).

14

405–06 (Tex. 1997), *superseded by statute as stated in General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *see Heinrich*, 284 S.W.3d at 373 (ultra-vires claims "must be brought against the state actors in their official capacity. . . . [t]his is true even though the suit is, for all practical purposes, against the state"). Therefore, we conclude that Hunnicutt has not asserted a proper ultra-vires claim.

Because Hunnicutt has not asserted a proper ultra-vires claim, we need not address the parties' arguments regarding whether the remedy sought implicates immunity, including whether Giusto has the authority to redress any harm through the return of property. *Heinrich*, 284 S.W.3d at 373–74 ("because the suit is, for all practical purposes, against the state, its remedies must be limited"); *see* Tex. R. App. P. 47.1. We overrule issue 2.

## III.  CONCLUSION

Hunnicutt has not pleaded a claim over which the trial court has subject-matter jurisdiction. We affirm the judgment of the trial court as challenged on appeal.


/s/    Charles A. Spain
                   Justice

Panel consists of Justices Jewell, Spain, and Wilson.