**CITY OF LEON VALLEY ECONOMIC DEVELOPMENT CORP.,**
**Appellant**

v.

**Larry LITTLE, Appellee**

**No. 04-15-00488-CV**

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: March 22, 2017

---

Dan Pozza, Pozza & Whyte, PLLC, 239 East Commerce Street, San Antonio, TX 78205, R. Gaines Griffin, Davidson, Troilo, Ream & Garza, P.C., 601 NW Loop 410, Suite 100, San Antonio, TX 78216, for Appellant.

Matthew Fisher Wymer, Beirne, Maynard & Parsons, L.L.P., 112 East Pecan Street, Suite 2750, San Antonio, TX 78205, Marisa Resendez, 112 East Pecan Street, Suite 2750, San Antonio, TX 78205, for Appellee.

Sitting: Patricia O. Alvarez, Justice, Luz Elena D. Chapa, Justice, Irene Rios, Justice

## MEMORANDUM OPINION

Opinion by: Luz Elena D. Chapa, Justice

Leon Valley Economic Development Corporation (LVEDC) appeals the judgment in favor of Larry Little, rendered after a jury trial on Little's suit for breach of contract. LVEDC argues it is immune from suit and from liability. It also argues the evidence is legally and factually insufficient to support the jury's findings there was a contract, breach, and damages. Having previously held LVEDC is not immune from suit in this case, we now hold that it is immune from liability, and we therefore reverse the judgment and render judgment that Little take nothing.

### BACKGROUND

LVEDC is a Type B economic development corporation created by the City of Leon Valley in 2009 pursuant to the Development Corporation Act of 1979 (the Act). *See* TEX. LOC. GOV'T CODE ANN. §§ 501.001–507.202 (West 2015 & Supp. 2016). LVEDC was created to promote economic growth and development in the City of Leon Valley through the development of projects authorized by the Act and funded by 4B sales and use tax proceeds and bonds.

Following recommendations made in a study prepared by the American Institute of Architects, the City of Leon Valley and LVEDC began considering the development of a "Town Center" to attract and retain business in the city. LVEDC started discussions with Larry Little, a local commercial real estate developer who owned some undeveloped property in a suitable area. A plan emerged to develop a Town Center project on approximately eight acres of land. In 2010, LVEDC and the Leon Valley city council, by two resolutions, approved a project plan for Little to develop the property, which would consist of three buildings with a total of 100,000 square feet of primarily tax-generating retail space. LVEDC would acquire three pieces of property, at a cost of $850,000. It would contribute the properties to the project and retain a $500,000 interest in one of the buildings. LVEDC's commitment to the project would be financed by a Texas Leverage Fund loan from the Governor's Office of Economic Development & Tourism, and the loan would be repaid with 4B sales and use tax receipts. Little would own and finance the rest of the project and be the developer.

LVEDC and Little engaged in negotiations over the terms of a Development Agreement, and LVEDC applied for the Texas Leverage Fund loan. In June 2011, the Governor's Office of Economic Development & Tourism issued a commitment to fund the $850,000 loan, provided it was approved by LVEDC and the City of Leon Valley. However, the Development Agreement was never finalized and signed, the City refused to approve the loan, and the Town Center project fell through.

Little filed this suit for breach of contract against LVEDC. In an earlier interlocutory appeal, this court held the trial court had subject matter jurisdiction over the case because LVEDC was not immune from the breach of contract suit. *City of Leon Valley Econ. Dev. Corp. v. Little*, 422 S.W.3d 37, 45 (Tex. App.—San Antonio 2013, no pet.) (*Little I*). On remand, the case was tried to a jury, and the trial court denied LVEDC's motion for a directed verdict that was based on immunity from liability. Little contends that he and LVEDC reached enforceable oral agreements that LVEDC would acquire and give him the three parcels of property (four acres), that he would develop and own the entire project, and that LVEDC's obligations under the agreements were not contingent on either LVEDC obtaining fi-

nancing or the signing of a Development Agreement. He contends LVEDC breached its agreements by failing to give him the land needed to develop the project. The jury found that Little and LVEDC "intend[ed] to be bound by agreements relating to the Larry Little-Leon Valley Town Center project without the execution of a written agreement" and that LVEDC "fail[ed] to comply with the agreement." The trial court rendered judgment on the jury's verdict, which awarded Little the value of the land LVEDC "agreed to give" Little for the project, over $100,000 for expenditures Little made in performance of the agreements, and over $1,400,000 in lost past and future profits. LVEDC timely appealed the judgment, arguing it is immune from suit and liability and that the evidence is legally and factually insufficient to support the jury's findings.

## JURISDICTION—IMMUNITY FROM SUIT

In its first issue, LVEDC argues the trial court lacked subject matter jurisdiction over this case because LVEDC is immune from the suit. We addressed this issue in a previous interlocutory appeal from the trial court's denial of LVEDC's plea to the jurisdiction. *Little I*, 422 S.W.3d at 45. In *Little I*, we reasoned that because an economic development corporation is not a political subdivision of the state, it is not inherently entitled to governmental immunity from suit. *Id.* at 42; *see* TEX. LOC. GOV'T CODE ANN. § 501.055(b). We then concluded that section 505.106 of the Act does not grant a Type B economic development corporation immunity from a breach of contract suit. *Little I*, 422 S.W.3d at 43-45; *see* TEX. LOC. GOV'T CODE ANN. § 505.106(b).[1]

■ We are ordinarily bound by a decision reached in a previous appeal in the same case, but have discretion to reconsider an issue if the court's original decision was erroneous. *See Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). We decline to reconsider the issue and for the reasons stated in *Little I*, hold LVEDC is not immune from this breach of contract suit.

## IMMUNITY FROM LIABILITY

LVEDC also argues we should reverse the judgment because it was immune from any liability arising from its acts in connection with the Town Center project. After Little rested at trial, LVEDC moved for an instructed verdict, arguing that, pursuant to section 505.106(a) of the Texas Local Government Code, it is immune from liability for all damages arising from its pursuit of the Town Center project. The trial court denied the motion.

■ Section 505.106(a) of the Texas Local Government Code provides:

(a) The following are not liable for damages arising from the performance of a governmental function of a Type B corporation or the authorizing municipality:

(1) the corporation;

(2) a director of the corporation;

(3) the municipality;

(4) a member of the governing body of the municipality; or

(5) an employee of the corporation or municipality.

TEX. LOC. GOV'T CODE ANN. § 505.106(a). The plain language of the statute provides

---

1. Section 505.106(b) provides that "[f]or purposes of Chapter 101, Civil Practice and Remedies Code, a Type B corporation is a governmental unit and the corporation's actions are governmental functions." TEX. LOC. GOV'T CODE ANN. § 505.106(b). In *Little I*, this court held that the effect of subsection (b) is to grant a Type B economic development corporation immunity from suit only in tort claims. *Little I*, 422 S.W.3d at 43.

LVEDC is immune from liability for damages arising from its "performance of a governmental function of a Type B corporation." *Id.* An entity performs governmental functions when it acts "as the agent of the State in furtherance of general law for the interest of the public at large." *Gates v. City of Dallas*, 704 S.W.2d 737, 738-39 (Tex. 1986); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a) (West Supp. 2016) (defining the governmental functions of a municipality as those "that are enjoined on [it] by law and are given it by the state as a part of the state's sovereignty, to be exercised by the municipality in the interest of the general public"). A governmental entity that derives its authority from the laws of the state and that is created for purely public purposes performs only governmental functions. *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 83 (Tex. 1997).

When it enacted the Development Corporation Act of 1979, the legislature found that "the general welfare of the people of this state require as a public purpose the promotion and development of new and expanded business enterprises" and that "the means authorized by this subtitle and the assistance provided by this subtitle, especially with respect to financing, are in the public interest and serve a public purpose of this state in promoting the welfare of the residents of this state economically by securing and retaining business enterprises and as a result maintaining a higher level of employment, economic activity, and stability." Tex. Loc. Gov't Code Ann. § 501.004(a)(1), (4). We conclude that actions undertaken by a Type B economic development corporation pursuant to the Act to develop projects authorized by the Act are governmental functions. *See Weir Bros., Inc. v. Longview Econ. Dev. Corp.*, 373 S.W.3d 841, 846 (Tex. App.—Dallas 2012, no pet.); *Rayl v. Borger Econ. Dev. Corp.*, 963 S.W.2d 109,

114 (Tex. App.—Amarillo 1998, no pet.); *see also* Tex. Loc. Gov't Code Ann. § 505.106(b) (providing that for purposes of the Texas Tort Claims Act, all "the corporation's actions are governmental functions"); Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(34) (defining various community development and urban renewal activities undertaken by municipalities to be governmental functions).

## Authorized Functions of a Type B Corporation

The Act authorizes municipalities to create an economic development corporation, the general purpose of which is to finance "projects" that promote and develop new and expanded business enterprises to encourage employment and promote the public welfare. *See id.* §§ 501.051, 501.151. A municipality may adopt a sales and use tax for the benefit of a Type B corporation. *Id.* § 505.251. The Type B corporation may use the sales and use tax proceeds to pay the costs of projects authorized by sections 505.151-.158 or to pay the principal, interest or other obligations issued to pay the costs of projects. *Id.* § 505.302. A project's "costs" include the costs to acquire, construct, improve, or expand a project, the cost of acquiring all land and property rights or interests, financing charges, other expenditures necessary or incident to acquiring the project and placing it in operation; and expenses for "refunding any outstanding obligations, mortgages, or advances issued, made or given by a person" for a project cost. *Id.* § 501.152. Before a corporation may provide a direct incentive to or make an expenditure on behalf of a business enterprise for a project, it must enter into a performance agreement containing specific terms to ensure that the funds are used for the purposes authorized. *Id.* § 505.158.

Authorized projects of a Type B corporation in a municipality with a population of less than 20,000, such as the City of Leon Valley, include the land, buildings, equipment, facilities, expenditures, targeted infrastructure, and improvements found by the corporation board to promote new or expanded business development. *Id.* § 501.158(a). For these type of projects, the municipality's governing body must adopt a resolution authorizing the project if the project requires an expenditure of more than $10,000. *Id.* § 505.158(b).

## LVEDC AND THE PROPOSED TOWN CENTER PROJECT

■ LVEDC's Certificate of Formation provides that it "is organized exclusively for the purpose of benefiting and accomplishing public purposes." It is authorized to acquire, maintain, lease, and sell property and interests therein and may exercise all of the powers authorized by the Act in order to support economic development projects authorized by the Act. It was specifically authorized to pursue projects to develop and strengthen the Leon Valley business district. In addition, the city council adopted a sales and use tax for the benefit of LVEDC, and the voters approved the tax.

LVEDC's Town Center project was approved by its board of directors, and its $850,000 investment in the project was approved by the City of Leon Valley city council after public hearings. The first city council resolution, in March 2010, approved the Town Center project, "a 70,000 square foot retail, mixed use project that is projected to expand the City's tax base, promote growth, beautify the City, and stimulate future economic development." The resolution approved the expenditure of $500,000 in 4B sales and use tax revenue for "financial incentives and direct costs related to the project." The executive summary, which was made part of the resolution, stated that Little would invest approximately $10 million in the project, which was expected to result in the creation of approximately 200 jobs. It also stated that LVEDC would invest the $500,000 to obtain a deed to 1.99 acres "to be converted into an equivalent $500K equity in the building of approximately 3000-5000 square feet." The funding source was to be 4B sales tax receipts, leveraged by a loan from the Governor's Office of Economic Development & Tourism—Texas Bank For Economic Development, Texas Leverage Fund.[2] After further hearings, in August 2010, the Leon Valley city council passed another resolution approving LVEDC's purchase of two additional one-acre parcels of land for use in the Town Center project, at a cost of $350,000. These additional parcels were to accommodate an additional 30,000 square feet of leasable, sales-tax-generating space.

Little, LVEDC, and the City had ongoing negotiations over the terms of a Development Agreement, and LVEDC applied for an $850,000 loan from the Texas Leverage Fund. While waiting for these matters to be finalized, the parties became concerned that two of the lots LVEDC was to purchase and contribute to the project would become unavailable. Little acquired the lots, and in May 2011, Little and LVEDC entered into two written real estate sales contracts for LVEDC to buy the lots from Little. Each contract was expressly contingent on LVEDC obtaining financing from the Texas Leverage Fund and provided that Little's sole remedy for any default by LVEDC was to recover the

---

**2.** The Texas Leverage Fund program provides loans to economic development corporations to fund the cost of eligible projects; the loans are secured by the corporation's economic development sales and use tax receipt proceeds. 10 TEX. ADMIN. CODE § 181.3.

earnest money ($1,000 for each lot). Closing was to occur by May 31, 2011.

The Governor's Office of Economic Development & Tourism issued an $850,000 loan commitment on June 21, 2011. Funding of the loan was contingent on there being formal acceptance by LVEDC and the City of Leon Valley and the return of the executed documents within forty-five days. LVEDC approved and signed the loan documents. However, the loan documents were not formally accepted by the City within the required time frame. The City Manager testified he recommended the City not approve the loan until the Development Agreement with Little had adequate provisions to ensure Little completed the project and to protect LVEDC in the event Little failed to perform. The loan commitment lapsed, the Development Agreement was never finalized, and the entire project fell through.

LVEDC argues that it was performing the governmental functions of a Type B corporation in its dealings with Little that were directed toward bringing the Town Center project to fruition. We agree. The project and proposed expenditures are authorized by the Act. *See id.* §§ 501.152, 505.158. The project was approved by resolution of the City of Leon Valley city council. *See id.* § 505.158(b). The proposed funding of the property purchases and repayment of the loan with 4B sales tax proceeds are authorized by law. *See id.* § 505.302; 10 TEX. ADMIN. Code § 181.3. The specifics of LVEDC's commitment to and interest in the project and Little's obligations to develop the project were being negotiated in a written Development Agreement. *See* TEX. LOC. GOV'T CODE ANN. § 501.158. Although Little contends the written Development Agreement was not a prerequisite to LVEDC's obligation to contribute property to the project, he conceded in his demand letter that the parties in early 2010 agreed "to enter into a development agreement" and he testified at trial that LVEDC and the City required a development agreement.

Little's principal argument is that LVEDC was not performing governmental functions of a Type B corporation because it was not acting in the public interest, but rather "primarily for the good of a private individual" because LVEDC was to give him property and he, a private individual, would have reaped the financial benefit from the project. This argument fails to consider that one of the purposes of the Act is to promote and encourage business enterprises and economic development because, although it may benefit private interests, it also benefits the general public welfare. *See id.* § 501.004(a)(4). This particular project was intended and expected to revitalize the specific town center area, create jobs, and expand the tax base. Moreover, the Act expressly provides that a corporation may provide direct financial incentives to a private business enterprise, provided there is a performance agreement to ensure performance and protect the development corporation's investment. *See id.* § 501.158. Contrary to Little's argument, LVEDC did not violate this requirement of the Act because it did not contribute property to the project before executing a development agreement.

Little additionally asserts that LVEDC was performing a proprietary, not governmental, function in all of its dealings with him because LVEDC is not authorized to contract with an individual. Little cites no authority that supports this proposition. Section 505.102 of the Act, which Little cites, simply authorizes a Type B corporation to enter a contract with "another private corporation" to carry out a program objective. *Id.* § 505.102; *see also* § 501.002(5) (defining "corporation" to mean "a corporation organized under this

subtitle"). Section 505.102 authorizes contracts with other economic development corporations; it does not prohibit contracting with individuals. Other sections of the Act clearly contemplate that economic development corporations will have business dealings and enter into contracts with "users," "business enterprises," and "persons." *See, e.g., id.* §§ 501.152(13)(C), 501.153(a), 501.155, 501.158; *see also id.* § 501.003 (defining "user" to include "an individual, a partnership, a corporation, . . . any other private entity organized for profit or not for profit," and "a municipality, county, district other political subdivision, public entity, or agency of this state or the federal government").[3]

### Conclusion

We conclude that in its dealings with Little regarding the Town Center project, LVEDC was performing the governmental functions of a Type B corporation. Accordingly, it is immune from any liability arising from the performance of those functions. *See* § 505.106(a); *Weir Bros.*, 373 S.W.3d at 846. The damages Little sought and the judgment awarded all arose from LVEDC's performance of its governmental functions. We therefore reverse the trial court's judgment and render judgment that Little take nothing. Because of our disposition of the immunity-from-liability issue, we do not reach LVEDC's sufficiency issues.

---

3. We likewise find no merit to Little's assertion that LVEDC was not performing governmental functions because it violated section 502.051 of the Act. That section prohibits a Type B corporation from paying a fee, commission, or anything of value to a third party for business recruitment or business development without a written contract. *Id.* § 502.051. There is no evidence that LVEDC paid any amounts for business recruitment or development.