COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



SAI MONAHANS BROTHER
HOSPITALITY, LLC,

§

§

No. 08-21-00060-CV

Appeal from the

Appellant,

§

143rd Judicial District Court

v.

§

of Ward County, Texas

MONAHANS ECONOMIC
DEVELOPMENT CORPORATION and
CITY OF MONAHANS, TEXAS,

§

§

(TC #20-10-25580-CVW)

Appellees.

§

## O P I N I O N

The issue in this appeal is whether a city and the economic development corporation that

it created are entitled to governmental immunity in a lawsuit challenging a contract term between

the economic development corporation and a third party. Here, the trial court found that

Monahans Economic Development Corporation (MEDC) and the City Of Monahans, Texas (the

City) (collectively, the Defendants) were both entitled to governmental immunity from a lawsuit

brought by Sai Monahans Brother Hospitality, LLC (Sai). The parties focus their arguments on

whether the contract term at issue—an option to purchase land—was entered into under the City's

governmental or proprietary authority. We need not reach that issue, however, because we find

the City was not a party to the agreement, and Sai has pleaded no facts that tie the City to the

contract. Although we agree that the current petition does not state a claim against the City, we are constrained to remand to allow Sai an opportunity to replead. Further, we agree with Sai that the trial court erred in granting the plea in favor of MEDC, because MEDC is not a government entity entitled to immunity, and based only on the pleadings, we cannot say it was entitled to the "derivative immunity" that it urged below.

## I. FACTUAL BACKGROUND

MEDC is a Texas non-profit corporation that was created by the city council for the City of Monahans, Texas. MEDC's articles of incorporation define its authority. The articles state in part that the city council "has specifically authorized by resolution the Corporation to act on its behalf to further the specific public purpose of encouraging employment and enhancing the public welfare through promotion of tourism, development of commercial, industrial and manufacturing enterprises and has approved these Article of Incorporation of the Corporation."

In March 2019, Sai's predecessor-in-interest, Muhammad Imran, bought a 3.9-acre tract of land in Monahans, Texas from MEDC to construct a hotel. The deed to the property included an option contract stating that in consideration of Imran's promise to build the hotel, MEDC was conveying the land to him, subject to MEDC's right to purchase the land back from Imran for $280,000 if he did not comply with certain development and construction deadlines. In particular, the deed contained these deadlines that Imran had to meet: (1) submit engineering drawings of the project to the City by July 31, 2019 for review and approval; (2) pour a concrete slab by October 31, 2019; and (3) fully complete construction of the hotel by October 31, 2021. The deed further specified that "[t]ime [was] of the essence" in connection with Imran's obligation to pour the slab and to complete the hotel. MEDC could first exercise the option to repurchase the property if the

2

deadline for pouring the slab was not met, and it had a continuing right to exercise the option if the deadline for completing the hotel was not met.

On the same day that the deed was signed, Imran conveyed the property to Sai, a Texas limited liability company, that was formed for the express purpose of constructing the hotel. The record contains a document showing that Sai purchased the property from Imran for $695,420. Sai assumed the duties and obligations under the deed.

## II. PROCEDURAL BACKGROUND

### A. Sai's Original Petition

In May 2020, MEDC notified Sai by letter that, because it failed to meet the deadlines for submitting its engineering plans to the City and for pouring the concrete slab, MEDC was exercising its option to purchase the land under the deed. MEDC asked Sai to execute a warranty deed giving it title to the property in exchange for the agreed-upon price of $280,000. Sai declined, and instead filed its lawsuit against MEDC and the City. The original petition alleged that Sai timely submitted its engineering plans to the City, but that the City never responded, and therefore neither approved the plans nor objected to them.[1] Sai further alleged that it engaged the services of a builder to develop and construct the hotel, but that the builder never started construction in part because the City failed to approve the plans. In addition, Sai alleged that the delay was due to the COVID-19 pandemic, and the "stay-at-home" orders issued by state and local officials, which impeded the builder's ability to recruit staff and relocate equipment to the construction site.

Sai's petition asserted claims against both the City and MEDC for civil conspiracy, common law fraud, and statutory fraud. Sai sought to recover over $160,000 for the costs and

---

[1] Sai alleged that the date for submitting the plans was later amended and extended by agreement of the parties, but Sai did not specify what the agreed-upon date was, or when the plans were filed with the City.

expenses of the required engineering drawings, construction loan processing fees, architectural fees, and motel franchise fees.   In addition, Sai sought a declaration under the Texas Declaratory Judgment Act that the deed's option provision was unenforceable and the deadlines were excused, such that Sai was "authorized to proceed with the construction and development of the project." Sai asserted that it would be "unfair and unjust" to allow MEDC to enforce the option given the impediments to construction caused by the pandemic.   And finally, Sai sought to remove the cloud on its title because the deed, with the option provision, was recorded in the public deed records.[2]

The City is not a signatory to the contract.   Perhaps recognizing this fact, Sai pleaded that "in effect the City of Monahans and the Corporation are clearly indistinguishable from the other," asserting that the "the Corporation is authorized to act on behalf of the City Counsel."   In support of this claim, Sai pointed to MEDC's by-laws, which provide that the city council has the sole discretion "to alter the organization, progress, or activities of the Corporation subject only to any limitation provided by the State of Texas and the United States relating to the impairment of contracts entered into by the corporation."   And Sai pleaded that "this close Nexus between the City and the Corporation . . . has frustrated [Sai's] ability" to develop the property under the time frames stated in the option contract.

**B. The Defendants' Plea to the Jurisdiction**

The Defendants responded by filing a plea to the jurisdiction, seeking dismissal of all Sai's claims.   They generally contended that Sai's pleading failed to establish jurisdiction over the Defendants.   More specifically, the City asserted that it was immune from the fraud and conspiracy claims under the Texas Tort Claims Act, as Sai failed to plead a valid waiver under that

---

[2] The deed specified that the option to purchase would be filed in the county records and would create a lien on the property, but that the lien would be released and the option terminated upon Imran's "successful and timely" compliance with the deadlines set forth in the deed.

4

Act. It likewise argued the declaratory judgment and removal of the cloud to title claims should be treated as a breach of contract claim, again to which no statutory waiver of immunity applied. MEDC claims it also enjoys "derivative immunity" under these circumstances, pointing to Sai's allegation in its petition that MEDC was acting on the City's behalf in exercising the option to purchase the property.

Subject to its plea to the jurisdiction, MEDC counterclaimed, alleging that Sai had breached the option to purchase by failing to meet its several deadlines and by refusing to execute the warranty deed so that MEDC could take title to the property. MEDC sought specific performance of the option contract, requiring Sai to sell it the property for $280,000 in accordance with the option's terms.

### C. Sai's First Amended Original Petition and Response to the Plea

Sai responded with an amended petition, in which it dropped its claims for civil conspiracy and fraud, and also eliminated its request for economic damages. Sai, however, still brought a claim for declaratory relief seeking a:

> [J]udicial declaration that the developmental and construction deadlines for the property as set forth in the subject option contract are hereby unconstitutional, excused and that the option contract sought to be enforced against [it] by MEDC is hereby void, ultra vires, terminated and unenforceable and without further force and effect under Texas law.

Sai also renewed its claim to have the option contract removed from its chain of title, alleging that because of the pandemic and "the impediments caused by the various governmental protocols, it would be unfair and unjust" to allow MEDC to enforce the lien and option to purchase.

On the same day that it filed its amended petition, Sai also responded to the Defendants' plea to the jurisdiction, arguing that neither the City nor MEDC were entitled to immunity because entering the option contract to construct a hotel was a "proprietary" rather than a "governmental" function.

5

### D. The Defendants' Supplemental Plea to the Jurisdiction

In response, the Defendants supplemented their plea to the jurisdiction asserting that the subject of the lawsuit—entering the option contract—did not relate to a proprietary function; rather it was an action taken by MEDC to benefit the general public. The Defendants also argued: (1) Sai failed to allege sufficient facts to support a claim that there had been an unconstitutional or improper taking of its property; and (2) Sai failed to assert a valid ultra vires claim, as Sai had named no city official in its pleadings.

The trial court granted the plea to the jurisdiction and dismissed Sai's claims against both MEDC and the City. This appeal followed.

## III. ISSUES ON APPEAL

On appeal, Sai contends that the trial court erred by granting the City and MEDC's plea to the jurisdiction, contending that their actions in "entering" into the option contract to construct a hotel constituted a proprietary, rather than a governmental function. Thus, Sai alleges that neither could claim immunity for their actions. Sai breaks its arguments into two related issues: (1) whether the Defendants' actions in entering the option contract constituted a "statutorily designated government function to which immunity is [not] applicable," and (2) if the statutory test does not apply, whether the common law test for differentiating governmental versus proprietary functions also makes immunity inapplicable. As set forth below, however, we agree with the Defendants that we must analyze the question of the two entities' entitlement to immunity separately, as different factors apply in determining whether a city, and whether an economic development corporation, can claim immunity.

# IV. APPLICABLE LAW AND STANDARD OF REVIEW

## A. Governing law

Sovereign immunity generally shields the State, its agencies, and its officials from lawsuits unless waived by the legislature; governmental immunity similarly shields political subdivisions of the State such as counties, cities, and school districts. *See Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011) (sovereign and governmental immunity are related common law concepts that differ only in scope; their similarity sometimes causes the two terms to be used interchangeably); *Tooke v. City of Mexia,* 197 S.W.3d 325, 331 n.11 (Tex. 2006). Texas recognizes two threads of immunity: (1) immunity from suit, even when the government entity's liability is not disputed; and (2) immunity from liability, even though the government entity has consented to the suit. *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 746 (Tex. 2019). Immunity from suit implicates a court's subject-matter jurisdiction to resolve a dispute against the state or its political subdivisions, and is therefore properly raised in a plea to the jurisdiction. *Id.* In comparison, immunity from liability only protects the state and its political subdivisions from money judgments and is not jurisdictional; it therefore must be raised as an affirmative defense rather than by a jurisdictional plea. *Id.*

A plaintiff shoulders the burden of alleging facts establishing that the trial court has subject matter jurisdiction over its claims, or in other words, that a governmental defendant's immunity has been waived. *See Sepulveda v. County of El Paso*, 170 S.W.3d 605, 610 (Tex.App.--El Paso 2005, pet. denied), *citing Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *see also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012).

In general, a city—as a political subdivision of the state—has governmental immunity from suit when performing governmental functions, which are those in which the city is acting as an

7

arm of the state and in the interest of the general public. *Rosenberg*, 571 S.W.3d at 746 (recognizing that political subdivisions of the state, such as cities, are not sovereign entities, but "under the governmental-immunity doctrine, they share the state's immunity when performing governmental functions as the state's agent."); *see also Tooke*, 197 S.W.3d at 343 (governmental functions are those done in the performance of purely governmental matters solely for the public benefit); *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 776 (Tex. 2006) (in general, a city's governmental functions are public and performed by the municipality as the state's agent to advance the interest of the public at large). Thus, when a party brings a contract claim against a municipality, the municipality may assert immunity if it was performing a governmental function, rather than a proprietary function, by entering the contract. *See Owens v. City of Tyler*, 564 S.W.3d 850, 851 (Tex. 2018) (per curiam) (whether city had immunity from private parties' various contact claims was to be determined based on whether the city entered the contract in its proprietary or governmental function).

On the other hand, a city is not entitled to immunity if it was performing a proprietary function, which are those that a municipality may, in its discretion and in its private capacity, perform in the interest of the inhabitants of the municipality itself. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 439 (Tex. 2016) (*Wasson I*) (recognizing that the "common-law distinction between governmental and proprietary acts—known as the proprietary-governmental dichotomy—applies in the contract-claims context just as it does in the tort-claims context"); *see also Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 149 (Tex. 2018) (*Wasson II*) ("If a municipality contracts in its proprietary capacity but later breaches that contract for governmental reasons, immunity does not apply."). Thus, if a municipality was performing a proprietary, rather than a governmental, function when it entered a contract, the municipality's immunity is waived as for any claims relating to the contract. *Wasson II*, 559 S.W.3d at 149 (city

8

was not immune from suit for breach of contract where the City was performing a proprietary function when it entered the contract).

## B. Procedure to Raise Immunity

A governmental entity may raise immunity through a plea to the jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). The plea may challenge either the adequacy of a plaintiff's pleadings or the existence of jurisdictional facts to support a finding of subject matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). When, as here, a plea to the jurisdiction challenges the pleadings alone, the trial court must construe the pleadings liberally in favor of the pleader, looking to the pleader's intent, and taking the pleader's allegations as true. *Id*. at 226. If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397-98 (Tex. 2022) (recognizing plaintiffs' right to amend their pleadings to allege facts supporting the elements of their claim against the defendant city). If, on the other hand, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id*. at 397; *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("[A] pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect."). Whether a party has met its burden of alleging sufficient facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law that we review de novo. *Miranda,* 133 S.W.3d at 226.

## V. THE CITY'S IMMUNITY

We first consider whether Sai has alleged sufficient facts to demonstrate that the trial court had subject matter jurisdiction over its claims against the City. We conclude that it did not. We also conclude, however, that Sai is entitled to an opportunity to amend its pleadings to cure this jurisdictional defect.

### A. Sai Failed to Allege Sufficient Facts Demonstrating a Waiver

Sai attached the "Option to Purchase Real Estate" agreement to its first amended petition. The agreement is between Sai's predecessor and MEDC—the City is not a party. Sai's amended pleading affirmatively alleges that MEDC, and not the City, entered the option contract, and that only MEDC was attempting to enforce the contract against it. Sai's first claim for relief asks the court to declare the option contract void and unenforceable. Similarly, in its second claim for relief, Sai sought an order removing the cloud on its title caused by the option contract. Its claims thus focus on the option contract to which the City is not a party.

Sai, though, sought to justify naming the City as a party in the first amended petition, through these allegations:

- "[MEDC] was created and [formed] under the auspices of the City Council of the City of Monahans, Texas."

- "The City Council has the sole discretion . . . 'to alter the organization, progress, or activities of the corporation subject only to any limitation provided by the State of Texas and the United States relating to the impairment of contracts entered into by the corporation.'"[3]

- "Thus, in effect, the City of Monahans is the Monahans Economic Development Corporation, and the actions of one are clearly the actions of the other."[4]

---

[3] The quoted portion is in the original, but it is unclear what is being quoted.

[4] The quoted portion is in the original, but it is unclear what is being quoted.

10

- "The authority of MEDC is set forth in article 10 of its Articles of Incorporation where it states: . . . The Governing Body of the Unit has specifically authorized by resolution the Corporation to act on its behalf to further the specific public purpose of encouraging employment and enhancing the public welfare through promotion of tourism, development of commercial, industrial and manufacturing enterprises and has approved these Articles of the Corporation."

According to Sai, these allegations show that the two entities are "indistinguishable" thereby subjecting the City to suit for any actions taken by MEDC    We disagree.

While a court must accept the allegations in the plaintiff's petition as true in resolving a plea to the jurisdiction, we need not accept mere conclusory statements. *See, e.g.*, *State v. Lueck*, 290 S.W.3d 876, 884-885 (Tex. 2009) (recognizing that a plaintiff's pleadings must do more than make bare allegations to survive a plea to the jurisdiction); *PermiaCare v. L.R.H.*, 600 S.W.3d 431, 444 (Tex.App.--El Paso 2020, no pet.) (same).    Instead, a plaintiff must allege specific *facts* that, if true, would affirmatively demonstrate the court's jurisdiction to hear the case. *PermiaCare*, 600 S.W.3d at 444.    None of the alleged facts in the first amended petition do so.

Taking the allegations in turn, the fact that the City created the MEDC does not establish that the two are one and the same.    MEDC was created under the Development Corporation Act, which governs the creation and activities of economic development corporations. *See* TEX.LOC.GOV'T CODE ANN. § 501.001 et seq.    The Act authorizes a governmental entity (referred to as the "authorizing unit") to create an economic development corporation to, among other things, undertake projects designed to spur economic growth, reduce unemployment, and improve infrastructure. *See Rosenberg*, 571 S.W.3d at 741, *citing* TEX.LOC.GOV'T CODE ANN. §§ 501.004, .054(a); *see also* TEX.LOC.GOV'T CODE ANN. § 501.002(1).    In creating an economic development corporation, an authorizing unit must abide by the requirements set out by the legislature, which are exemplified by two of Sai's other allegations.

11

Another of Sai's allegations is that the City has the discretion to "alter the organization, progress, or activities of the corporation" (subject to limitations). But that power is required under the Act, as section 501.302 provides that the authorizing unit in its "sole discretion" and "in accordance with this subchapter" can "amend the corporation's certificate of formation at any time" by adopting an amendment and delivering the same to the secretary of state. *Id.* § 501.302. Moreover, the "authorizing unit" under the Act is assigned supervisory duties in that it "will approve all programs and expenditures of a corporation and annually review any financial statements of the corporation" and is "entitled to access to the corporation's books and records at all times." *Id*. § 501.073; *see also id.* § 501.054 (b) (corporation's powers for projects are "subject to the control of the governing body of the corporation's authorizing unit."). Thus, the petition's assertion of what the City could do in its "sole discretion" is essentially a power that the City is *obligated* to retain by the Act to retain.

Next, the recitation in the petition taken from MEDC's articles of incorporation is also language dictated by the Act. Sai focuses on the phrase that the City's "Governing Body" authorized MEDC "to act on its behalf." But that language comes straight from the Act. *See id*. § 501.056 ("The certificate of formation of a corporation must state: . . . that the unit has: (A) by resolution specifically authorized the corporation *to act on the unit's behalf* to further the public purpose stated in the resolution and the certificate of formation; and (B) approved the certificate of formation.") (emphasis supplied).

Thus, these last two allegations in the petition do no more than factually allege what was required of the City under the Act when it creates a development corporation. And we doubt that by merely following the requirements of the Act, the legislature intended to make the City subject to any suit brought against the development corporation it creates. In fact, that result is at odds with how the legislature dealt with the liability of an authorizing unit and the development

12

corporation. While the Act expressly provides that a development corporation may sue or be sued for its involvement in an authorized project, the Act contains no similar provision for the authorizing unit. If anything, this dichotomy suggests the legislature's intent that an authorizing unit, such as the City, remains immune in such suits.[5]

Sai's other allegation—that "in effect the [City] is [MEDC] and the actions of one are clearly the actions of the other"—is at best conclusory, and is not a *fact* that proves up jurisdiction. We discount out-of-hand this unattributed quoted language in the petition.

Without saying as much, Sai is attempting to pierce the corporate veil of MEDC to make the City equally responsible for its actions. But even assuming that claim is cognizable, something we do not decide, Sai's only factual allegations are that the City followed the terms of the Act for creating a development corporation. Following the Act, however, does not demonstrate that the City and MEDC are one and the same—if anything compliance with the Act presupposes the two are distinct entities, with different powers and responsibilities. The structure of the Act contemplates that the authorizing unit and the development corporation are distinct entities.

First, under the Act, MEDC had the independent authority to execute the option contract. It possesses the powers given to a nonprofit corporation under the Texas Non-Profit Corporation Act, as well as all powers necessary to undertake any authorized projects allowed under the Act. *Id*. § 501.054 (a), (b). The Act expressly provides that a development corporation may finance, acquire, lease or sell property for authorized "projects," which include "land, buildings, equipment,

---

[5] We recognize that a statute providing that a government entity may "sue and be sued," standing alone, is not always demonstrative of a legislative intent to waive the entity's immunity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006). Here, however, the lack of any such language as to a city's immunity supports the conclusion that the legislature did not intend to waive a city's immunity, or treat the two entities the same for the purposes of immunity. *See generally id*. at 333 (recognizing that a "waiver of immunity must be clear and unambiguous"); *see also* TEX. GOV'T CODE ANN. § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

13

facilities, targeted infrastructure, and improvements that are . . . for the creation or retention of primary jobs . . .” *Id.* § 501.101; § 501.151-153.   The Act also gives a Type B corporation, such as MEDC, the power to contract with other private corporations to, among other things, “assist with the development or operation of an economic development program or objective consistent with the purposes and duties specified by this subtitle.”[6]  *Id.* § 505.102; *see also City of Leon Valley Econ. Dev. Corp. v. Little*, 522 S.W.3d 6, 10-11 (Tex.App.--San Antonio 2017, pet. denied) (recognizing powers of a Type B corporation). Thus, MEDC did not require the participation of the City to execute the option contract.

And the Act recognizes that each of these entities have separate governance—the authorizing unit through its Governing Body (a defined term) and the development corporation through its board of directors.   TEX.LOC.GOV'T CODE ANN. § 501.002(10) (defining Governing Body as the “the commissioners court of a county or the governing body of a municipality or district”); § 501.056 (contents of certificate of formation requiring appointment of board by governing body); *Rosenberg*, 571 S.W.3d at 745 (“[a]ll of the powers of [the] corporation are vested in the corporation's board of directors”).   The Act also draws another distinction between the authorizing unit and the development corporation—it forbids the authorizing unit from delegating any “attributes of sovereignty.”   *Rosenberg*, 571 S.W.3d at 745, *citing* TEX.LOC.GOV'T CODE ANN. § 501.010 (“A unit may not delegate to a corporation any of the unit's attributes of sovereignty, including the power to tax, the power of eminent domain, and the police power.”). Thus, while an economic development corporation is subject to supervision by its authorizing unit, it is not one in the same, particularly in determining immunity.

---

[6] There are two types of development corporations, Type A and Type B.   MEDC acknowledges in its pleadings that it is a Type B corporation.

Sai argues that a court must first apply the government-proprietary distinction to decide whether immunity applies at all. To some degree we agree with that argument, but a court must first define what *action* the City took to determine whether its purpose was governmental or proprietary. The Texas Supreme Court in *Wasson II* wrote that a municipality shares the State's immunity when they "*act* 'as a branch' of the State, but not when they *act* 'in a proprietary, non-governmental capacity." *Wasson II*, 559 S.W.3d at 146, *quoting Wasson I*, 489 S.W.3d at 430 (emphasis supplied). Similarly, the court wrote that the government-proprietary distinction turns on the municipality's "activities" and the functions it "perform[s]". *Id*. at 147. Thus, determining its function presupposes some action by the City. Stated otherwise, Sai was required at a minimum to allege facts to support a finding that the City engaged in some "action" as to the option contract that would allow a court to determine whether the action was a governmental or proprietary function. The amended petition, however, does not allege that the City took any action. It at most alleges that the City had the "sole discretion" "to alter the organization, progress, or activities" of MEDC. But that does not mean that the City did so with respect the option contract.

We conclude that the petition fails to allege any facts that overcomes the City's governmental immunity.

## B. Right to Amend

Unless a petition affirmatively negates the existence of jurisdiction, a plaintiff has a right to amend their pleadings. *Dohlen*, 643 S.W.3d at 397-98 (finding plaintiffs failed to allege any actions of city to fall within statutory waiver of immunity, but allowing repleading as petition did not negate jurisdiction). While we accord Sai that right, we add three comments about what would not suffice to meet the minimum threshold to establish jurisdiction against the City.

15

First, as we have already written, if Sai can do no more than plead facts showing that the City complied with the various provisions of the Development Corporation Act, it has not pleaded a viable claim against the City. A governmental unit's compliance with the provisions of that Act does not establish a waiver of governmental immunity.

Second, the petition alludes to the City's processing of the engineering and site plans, but Sai expressly does not premise jurisdiction on those actions.[7] And notably, certain city functions are defined, for the purpose of the Tort Claims Act, as governmental functions which includes among others, "zoning, planning, and plat approval" and "engineering functions[.]" *See* TEX.CIV.PRAC.& REM.CODE ANN. § 101.0215(29), (30).[8] If a function is designated as governmental in the statute, courts have no discretion to view it otherwise. *City Carrollton v. Weir Brothers Contracting, LLC*, No. 05-20-00714-CV, 2021 WL 1084554, at *3 (Tex.App.--Dallas Mar. 22, 2021, pet. denied), *citing Wasson II*, 559 S.W.3d at 150) ("If a function is designated in section 101.0215 as governmental, we have no discretion to determine that it is proprietary.").

---

[7] Sai's introductory remark in its brief succinctly makes the point: "And ultimately, it is only the act of entering the option contract—not the acts MEDC or Monahans took afterward—that is relevant to immunity." Appellant's Brief at p. 1.

[8] The list of 36 "governmental functions" under section 101.0215(a) includes: ". . . (28) building codes and inspection; (29) zoning, planning, and plat approval; (30) engineering functions[.]" TEX.CIV.PRAC.& REM.CODE ANN. § 101.0215(a). The Texas Supreme Court applies the Texas Tort Claims Acts' definitional guidance in the context of contract claims to determine what type of function a city was performing when it entered a contract. *See Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 147 (Tex. 2018).

Third, Sai asks that we remand the case to allow it to plead a constitutional taking[9] and ultra vires claim.[10] But a plaintiff's general right to amend its pleadings to allege additional facts to cure a jurisdictional defect is not a mechanism for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction. *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016); *see also San Jacinto River Auth. v. Ray*, No. 14-19-00095-CV, 2021 WL 2154081, at *6 (Tex.App.--Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.) (same). In other words, a plaintiff has no right to amend its petition to cure a jurisdictional defect by "changing the claims they are bringing," and instead only has a right to amend its petition by adding jurisdictional facts to support a previously pled claim for relief. *Clint Indep. Sch. Dist.*, 487 S.W.3d at 559.

Therefore, although we allow Sai to amend its petition, it must do so in accordance with these principles, or any amendment would be futile and subject to dismissal.

## VI. MEDC WAS NOT ENTITLED TO IMMUNITY FROM SUIT

Although we find that the City was immune from Sai's suit, we do not similarly find that MEDC was entitled to governmental immunity on this record.

### A. MEDC is not a Governmental Entity for Immunity Purposes

The Development Corporation Act gives economic development corporations, such as MEDC, the authority to undertake projects that have a public, or governmental, purpose. The

---

[9] In a letter brief that Sai submitted to the trial court, Sai stated that the City Defendants were attempting to engage in an "unconstitutional taking" of its property, contending that it paid over $695,000 for the property and that the Defendants were trying to "take" the property for far less than its true value. However, Sai did not amend its petition to add a "takings" claim against the City.

[10] An ultra vires claim must be brought against a government official, rather than against a governmental entity, and must allege that the official acted outside his or her lawful scope of authority. *See, e.g.*, *Luttrell v. El Paso Cnty.*, 555 S.W.3d 812, 837 (Tex.App.--El Paso 2018, no pet.). Sai failed to name any governmental officials in its live pleadings, and therefore did not allege a valid ultra vires claim. *See id.* at 837 (plaintiff's ultra vires claim failed as a matter of law where only named government official was dismissed from the lawsuit).

17

Act, however, expressly states that a corporation is "not a political subdivision or a political corporation for purposes of the laws of this state," and it also prohibits a government entity from bestowing any "attributes of sovereignty" on the corporation. TEX.LOC.GOV'T CODE ANN. § 501.010, .055(b). As a result, the Texas Supreme Court has expressly held that a development corporation is not a governmental entity that is entitled to governmental immunity from suit. *Rosenberg*, 571 S.W.3d at 750 (affirming the court of appeals' judgment denying the economic development corporation's plea to the jurisdiction); *see also City of Leon*, 522 S.W.3d at 9 (concluding that a development corporation is not immune from a breach of contract suit).

Rosenberg addressed a plaintiff who alleged a breach of contract claim. And MEDC points out that Sai's claim is not for breach of contract, but seeks a declaration that a contract provision is invalid. That distinction fails, however, as the court in *Rosenberg* did not limit its holding to only breach of contract claims, and in fact, the plaintiff in *Rosenberg* also sought relief under the Declaratory Judgment Act, just as Sai has done. *Rosenberg*, 571 S.W.3d at 742 (noting that the litigation in that case involved various claims, counterclaims, and third-party claims, but the immunity issue on appeal was limited to the plaintiff's breach of contract and declaratory judgment claims). And we also note that MEDC has cited no cases, nor are we aware of any, that have interpreted *Rosenberg* so narrowly, or that would otherwise allow us to treat a development corporation as a government entity for immunity purposes in a lawsuit of the type that Sai has brought against it. We therefore conclude that MEDC was not entitled to governmental immunity on this basis.[11]

---

[11] The court in *Rosenberg* noted that while a development corporation is not immune from *suit*, the Act provides that it is immune from *liability* for damages when it performs a "governmental function" as defined by the Act. *See Rosenberg Dev. Corp.v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 745 (Tex. 2019), *citing* TEX.LOC.GOV'T CODE ANN. § 505.106 (a) (a Type B development corporation is "not liable for damages arising from the performance of a governmental function of a Type B corporation or the authorizing municipality."); *see also City of Leon Valley Econ. Dev. Corp. v. Little*, 522 S.W.3d 6, 9 (Tex.App.--San Antonio 2017, pet. denied) (concluding that a Type B

18

### B. MEDC has not Proved its Entitled to Derivative Immunity

MEDC next contends that even if it cannot be considered a governmental entity to receive immunity from suit, it is still entitled to "derivative immunity" which would protect it from Sai's lawsuit. We disagree.

As the Texas Supreme Court noted in *Rosenberg*, derivative immunity is a distinct analytical inquiry, which is separate from the question of whether a development corporation may be considered a governmental entity for purposes immunity. *Id*. at 752. The same court recognized that the concept of derivative immunity is "ill-defined" in the law, and it is unclear whether the doctrine exists in Texas and, if so, whether it would apply to a development corporation. *Id.* at 751-52. In explaining the doctrine, however, the *Rosenberg* court referred to its earlier opinion in *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 126 (Tex. 2015).

In *Brown*, the plaintiffs sued a government contractor claiming that it had negligently designed a tollway on behalf of a county toll road authority. *Brown & Gay Eng'g., Inc*, 461 S.W.3d at 120. The contractor argued that it was entitled to derivative immunity for its actions, as it designed the tollway on the toll authority's behalf. *Id.* While not deciding whether it would recognize the doctrine of derivative immunity, the court in *Brown* observed that the doctrine only provides immunity to a contractor when it operates solely "upon the direction" of the government entity, such that "a lawsuit against one is a lawsuit against the other," but not when the contractor retains "discretion in its activities." *Id.* at 124, *quoting K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex.1994). The court then held that even if it were to recognize the doctrine of derivative immunity, the evidence in that case demonstrated that the defendant "was an independent contractor with discretion" to perform its job, and that it would therefore not be entitled to derived

---

development corporation was not immune from suit in breach-of-contract case, but was immune from liability for damages).

immunity given the toll authority's lack of control over it. *Id*. at 126. The court further noted that when appellate courts have found that a private contractor was entitled to derivative immunity, "the complained-of conduct for which the contractor was immune was effectively attributed to the government." *Id*. at 125. The court then stated that even if those cases were correctly decided, the element of control in the case before it was "utterly absent," thereby making the doctrine inapplicable. *Id.* at 126.

In a later opinion, the court—again without deciding whether the doctrine of immunity exists in Texas—concluded that a governmental entities' right to supervise a contractor's work or to give final approval to the work does not equate to the kind of control that would merit application of the derivative immunity doctrine. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 733, 737 (Tex. 2020) ("[E]ven if [the court] recognized derivative sovereign immunity for contractors," it would not find that the contractor in that case would be entitled to such, as the record before it demonstrated that the contractor retained the sole control of its work, subject to final approval by the Commission); *see also Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 77 (Tex.App.--Houston [1st Dist.] 2016, pet. denied) (where U.T. Physicians operated a medical clinic under contract with a governmental entity giving it discretion in its operations of the clinic, they were not entitled to immunity in a suit claiming that a clinic nurse was negligent, even though the governmental entity had the right to approve and remove personnel). Rather, to be entitled to derivative immunity, the contractor must establish that it was, in effect, left without discretion to perform its job. *Nettles*, 606 S.W.3d. at 736-37; *see also Cheney v. Levy Co.*, No. 03-19-00243-CV, 2020 WL 6265656, at *6 (Tex.App.--Austin Oct. 23, 2020, no pet.) (mem. op.) (doctrine of derivative immunity did not apply when government contractors did not conclusively establish a lack of discretion that might justify the extension of the City's governmental immunity to them).

20

MEDC's plea to the jurisdiction is based entirely on the allegations in Sai's petition—it presented no evidence of its own. But it failed to point to any factual allegations in Sai's petition that the City controlled its actions for entering or enforcing the option contract, or that it otherwise lacked any discretion in undertaking these actions. Instead, MEDC relies on Sai's allegation that MEDC was acting on "behalf of the City Council" in exercising the option to purchase the property. As addressed above, however, even if we were to recognize the doctrine of derivative immunity, an allegation that MEDC was generally "acting on behalf of the City" would not be enough to establish that the City was exercising the type of control over MEDC's actions that would rise to the level necessary to warrant application of the doctrine.

Thus, while we express no opinion on the merits of Sai's claims against MEDC, we simply hold that on this record, we cannot say that MEDC is entitled to derivative immunity for Sai's claims based on Sai's live pleading. We therefore conclude that the trial court erred in granting the plea to the jurisdiction with respect to MEDC.

## VII. CONCLUSION

For the reasons set forth above, we affirm the trial court's decision granting the City's plea to the jurisdiction but accord Sai the right to replead if it can. We also conclude that the trial court erred in granting MEDC's plea to the jurisdiction. We therefore reverse that decision and remand for further proceedings consistent with our opinion.

JEFF ALLEY, Justice

August 24, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

21